**Denise Kay MORGAN f/k/a Denise Kay Gaeth, Appellant,**

v.

**Jeffrey Michael GAETH, Respondent.**

No. WD 68978.

Missouri Court of Appeals, Western District.

Oct. 21, 2008.

Rehearing Denied Nov. 25, 2008.

Lance W. Lefevre, Lee's Summit, MO, for Appellant.

Jeffrey M. Gaeth, Lee's Summit, MO, pro se.

Before: HAROLD L. LOWENSTEIN, P.J., VICTOR C. HOWARD, and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

Denise Kay Morgan appeals the trial court's judgment granting Jeffrey Gaeth's family access and contempt motions. We affirm.

On August 23, 2004, the trial court entered a judgment dissolving the marriage of Morgan and Gaeth. In the judgment, the trial court granted the parties joint legal and physical custody of their three children. The trial court's judgment ordered Morgan to assume and pay certain marital debts including the parties' debts from First Community Bank and Capital One. The judgment ordered her to personally indemnify Gaeth from any liability based on these debts.

On March 16, 2007, Gaeth filed his first amended motion for family access relief and for an order for Morgan to show cause why she was not in violation of the trial court's dissolution judgment. Gaeth alleged that, on numerous occasions, Morgan refused to release the children into his custody so he could exercise his specific parenting time with them. Gaeth also alleged that Morgan refused to indemnify him from the First Community Bank and Capital One debts.

On August 23, 2007, the trial court entered judgment granting Gaeth's family access motion. In the judgment, the trial court granted Gaeth compensatory parenting time to run through July 31, 2008. The trial court also found Morgan in contempt of the 2006 dissolution judgment for failing to indemnify Gaeth from the First Community Bank and Capital One debts. The trial court, however, stayed the execution of the contempt order until December 6, 2007, to grant her time to purge herself of the contempt. Morgan did not purge herself of the contempt order, but, nevertheless, the trial court set aside that part of the judgment. This appeal follows.

### Legal Analysis

In her first point on appeal, Morgan asserts that the trial court erred in granting Gaeth's family access motion. She complains that the trial court granted the motion even though it found that she did not willfully or intentionally fail to comply with the trial court's visitation order. She asserts that, under section 452.400,[1] the trial court cannot grant a family access motion unless the custodial parent intentionally fails to comply with the visitation order.

■■ Before considering the merits of Morgan's point, we must consider whether or not Morgan's claim is moot. *Glover v. Michaud,* 222 S.W.3d 347, 350 (Mo.App. 2007). A case is moot when the circumstances that surround it change sufficiently to cause a legal controversy to cease, rendering a decision by the judiciary as insignificant in providing effective relief. *Mo. Gas Energy v. Pub. Serv. Comm'n,* 224 S.W.3d 20, 24–25 (Mo.App.2007).

In granting Gaeth's family access motion, the trial court found that, pursuant to section 452.400.3, Morgan had denied and interfered with his custody. As relief, the trial court determined that Gaeth should have compensatory periods of physical parenting time. A review of the judgment, however, establishes that Gaeth's last date of compensatory visitation was July 31, 2008, and, therefore, every one of Gaeth's compensatory visitation dates have already passed. Hence, even if we were to agree with Morgan that the trial court should not have granted the family access motion, we could not reverse the judgment and afford her any relief from the compensatory visitation order.

Nevertheless, the record also establishes that because the trial court found that she had denied and interfered with Gaeth's visitation, it ordered her, pursuant to section 452.400.6(5), to pay the cost of psychiatric counseling, and ordered her, pursuant to section 452.400.7, to pay Gaeth's and the guardian ad litem's attorney's fees. Hence, even though we cannot grant her any relief concerning the compensatory visitation periods, we could, by finding that the trial court erred in granting Gaeth's family access motion, relieve her of her obligations to pay the cost of the psychiatric counsel and attorney's fees. Thus, Morgan has presented a live controversy, which we turn to now.

■■ In finding that Morgan had denied and interfered with Gaeth's visitation rights, the trial court concluded:

31. The litany of the custody problems that have occurred in the case are disturbing. The use of police, and the allegations of abuse have created an atmosphere that can only be described as toxic. While clearly [Gaeth] has not received his parenting time as ordered in the decree, due to police involvement and charges which were dropped, the investigation of the abuse allegations,

---

**1.** All statutory references are to RSMo 2000 unless otherwise indicated.

and [the child's] constant and adamant refusal to see [Gaeth], including resorting to running away when sent out to his car, *the Court cannot find that [Morgan] has willfully or intentionally failed to comply with the Court's judgment as to custody.*

32. *However, pursuant to the family access motion filed under Section 452.400.3 RSMo., the Court finds that custody has been denied or interfered with by [Morgan] without good cause.* Much of the problems that have occurred because of her refusal to communicate or cooperate with [Gaeth]. She has failed to encourage [the child] to visit her father, and there have been no consequences to [the child's] behavior. [Morgan] is allowing the child to make decisions instead of herself in this regard.[2]

Morgan asserts that the trial court's conclusion that she could not be held in contempt of court pursuant to section 452.400.3 because she did not "willfully or intentionally fail[ ] to comply with Court's judgment as to custody[ ]" prevents the trial court from granting his family access motion pursuant to § 452.400.3 on the ground that she "denied or interfered" with Gaeth's parenting time.

Section 452.400.3 says:

The court shall mandate compliance with its order by all parties to the action, including parents, children and third parties. In the event of noncompliance, the aggrieved person may file a verified motion for contempt. If custody, visitation or third-party custody is denied or interfered with by a parent or third party without good cause, the aggrieved person may file a family access motion with the court stating the specific facts which constitute a violation of the

judgment of dissolution or legal separation.

In a prior version of section 452.400.3, RSMo 1998, the General Assembly provided:

The court shall mandate compliance with its order by both the custodial parent and the child. In the event of noncompliance, the noncustodial parent may file a motion for contempt. Upon a finding by the court that its order for visitation has not been complied with, without good cause, the court shall define the noncustodial parent's visitation in detail and shall exercise its discretion in providing a remedy, which shall include, but not be limited to, a compensatory period of visitation or temporary custody at a time convenient for the noncustodial parent not less than the period of time denied, together with a judgment in an amount not less than the reasonable expenses incurred by the noncustodial parent as a result of denial of visitation.

Morgan concedes that the 1998 version of section 452.400 authorized the noncustodial parent to file only a motion for contempt and that the General Assembly revised the statute to authorize the noncustodial parent to file either a contempt motion or a family access motion. She contends correctly that to find her guilty of contempt under either version, the trial court would have to find that she willfully and intentionally violated the visitation order. *See Simpson v. Buck,* 971 S.W.2d 856, 860 (Mo.App.1998). She asserts, however, that nothing in section 452.400 suggests that the General Assembly intended to create a different intent standard in determining whether or not relief should be granted in response to a family access motion. She contends that, by using "denied," "inter-

---

**2.** We added the emphasis.

fered," and "good cause," the General Assembly's intent in creating the family access motion was to create a *pro se* motion for contempt with the same intent required as in a normal contempt motion. We disagree.

■ When interpreting a statute, the judiciary's task is to ascertain the General Assembly's intent from the plain and ordinary meaning of a statute's words. *Cline v. Teasdale*, 142 S.W.3d 215, 222 (Mo.App. 2004). "Statutory interpretation is purely a question of law, which we determine *de novo.*" *Id.*

Morgan's interpretation of section 452.400 ignores the plain and ordinary meaning of the statute's words. Section 452.400 authorizes an aggrieved person to file a family access motion if a parent denies or interferes with custody without good cause. The statute does not say that the denial or interference must be intentional or willful, and we do not believe that General Assembly intended to imply it, either. Contrary to Morgan's contention—asserted without citation to any authority—that, by definition, denial and interference are intentional acts, a person can deny or interfere with the other parent's visitation rights without intending to do so. *See Basham v. Williams*, 239 S.W.3d 717, 727 (Mo.App.2007) (trial court did not abuse its discretion in finding that, although the parent did not obey the visitation order, he acted unintentionally). For example, a parent who is unable to deliver a child to the other parent because she was forced to stay late at work has interfered with the other parent's visitation but has likely acted unintentionally.

Had the General Assembly wanted to require intentional conduct as a basis for the granting of a family access motion, it surely would have modified "denied or interfered" with the adverb "intentionally." Because it did not, we infer that the General Assembly authorized the granting of a family access motion even when the denial or interference was unintentional.

■ Nor does the "good cause" requirement in section 452.400 mandate that a denial or interference be intentional for the granting of a family access motion. The General Assembly did not define "good cause" in section 452.400. When the General Assembly fails to define a term and it has a common law meaning, we presume that the General Assembly intended that meaning. *PharmFlex Inc. v. Div. of Employment Sec.*, 964 S.W.2d 825, 830 (Mo.App.1997).

> [Under the common law, t]he meaning of the concept of 'good cause' appears to vary to some extent according to the context in which the issue arises. Good cause has been defined as 'a cause or reason sufficient in law: one that is based on equity or justice or that would motivate a reasonable man under all the circumstances.' *State v. Davis*, 469 S.W.2d 1, 5 (Mo.1971) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY). Generally, the term 'good cause' necessarily implies reasonableness and good faith.

*Reisdorph v. Div. of Employment Sec.*, 8 S.W.3d 169, 172 (Mo.App.1999). "Good cause" in the context of section 452.400 requires that the parent's denial or interference with the other parent's visitation be reasonable to avoid the granting of a family access motion. The term would have nothing to do with whether or not the denial or interference was intentional. Hence, section 452.400's wording does not suggest that the trial court's power to grant a family access motion is conditioned on its finding that the other parent intentionally denied or intentionally interfered with visitation.

■ Moreover, adopting Morgan's interpretation deprives the General Assembly's revisions to section 452.400 of any real meaning. Under both versions of section 452.400, the statute's first sentence authorizes the aggrieved parent to file a motion for contempt and requires the trial court to grant the motion if the offending party had intentionally and willfully disobeyed the court's visitation order. Under both versions, the trial court could grant the noncustodial parent a compensatory period of visitation if it found that the offending parent was in contempt. Because the General Assembly had already created a procedure and remedy to deal with intentional violations of visitation orders, amending section 452.400 to include an option of filing a family access motion, but limiting it only to intentional violations of visitation orders, would make little sense. Assuming that the General Assembly revised section 452.400 to do again what it had already accomplished would mean that the General Assembly amended the statute for no real reason. Of course, when the General Assembly amends a statute, we presume that it intended for the amendment to have some effect. *Wollard v. City of Kansas City*, 831 S.W.2d 200, 203 (Mo. banc 1992), *abrogation on other grounds recognized by Benton v. City of Rolla*, 872 S.W.2d 882 (Mo.App. 1994).

Morgan contends that the amendment was not a superfluous action because the family access motion was really intended to be the *pro se* equivalent of the motion for contempt. But if this were true, the General Assembly could have easily amended section 452.400 to mandate that the state court administrator develop a simple *pro se* form for the motion for contempt, rather than amend the statute to authorize a person's filing a family access motion and mandating that the state court administrator develop a simple *pro se* form for the family access motion.

Furthermore, had the General Assembly truly meant for the family access motion to be the *pro se* equivalent to the motion for contempt, with the same intent standard, it would have had little reason to come up with a different title for the motion. It simply could have called it a *pro se* motion for contempt. We, therefore, disagree with Morgan's argument that the family access motion is the functional equivalent of a motion for contempt.

Rather, by amending section 452.400, the General Assembly has made clear its intention to provide a mechanism for allowing a noncustodial parent to regain compensatory parenting time when the other parent denies or interferes with his original parenting time, even when the denial or interference was not willful or intentional. *Basham*, 239 S.W.3d at 726 (Family Access Act provides additional remedies for the denial of visitation when that denial does not rise to the level justifying contempt). Hence, the trial court's conclusion that Morgan was not in contempt because she did not intentionally or willfully fail to comply with the court's visitation order did not prevent the court's conclusion that she had denied or interfered with Gaeth's visitation without good cause.

In her second and third points, Morgan asserts that the trial court erred in holding her in civil contempt for violating the court's dissolution judgment requiring her pay off certain debts that the couple incurred together and to indemnify Gaeth from any liability from those debts.

At oral argument, however, Morgan's counsel conceded that these points are moot because the trial court entered a subsequent judgment setting aside its judgment of contempt. Morgan's counsel is correct that the trial court entered a

judgment setting aside its contempt order and this moots her second and third points.

### Conclusion

We affirm the trial court's judgment granting Gaeth's family access motion.

HAROLD L. LOWENSTEIN, P.J., and VICTOR C. HOWARD, J., concur.