

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| D.R.P., | ) |
| | ) |
| Appellant, | ) WD78541 |
| | ) |
| v. | ) OPINION FILED: February 9, 2016 |
| | ) |
| M.P.P., | ) |
| | ) |
| Respondent. | ) |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Patrick W. Campbell, Judge

Before Special Division: Cynthia L. Martin, Presiding Judge, Gary D. Witt, Judge and
Zel M. Fischer, Special Judge

Appellant D.R.P. ("Mother") appeals the judgment of the Circuit Court of Jackson County holding her in civil contempt of the court's judgment regarding the parenting plan for M.P.P. ("Father") with their minor child C.P. ("Daughter"). In her sole point on appeal, Mother argues the trial court erred in finding that she willfully, intentionally, and contumaciously disobeyed the court's judgment and parenting plan because there was not substantial evidence to support such a finding. We affirm and remand to the trial court.

# FACTUAL BACKGROUND[1]

The basic facts of this case are not in dispute. Mother and Father married in 1999 and Daughter was born in 2001. The marriage between Mother and Father was dissolved in 2005, at which time Father failed to appear in court and Mother was awarded sole legal and physical custody of Daughter. Father was granted visitation with Daughter, initially on restricted terms that were eventually lifted after Father successfully completed supervised visitation.

It would be an understatement to say that the relationship between Mother and Father remained contentious and litigious after their marriage was dissolved. Father has filed multiple family access motions, alleging he was deprived of parenting time, and motions to modify custody, visitation, and support. Mother has also filed successive motions for contempt, motions to modify parenting time, etc.

In 2007, Father moved to modify visitation, which was eventually resolved when the parties agreed to a stipulated custody and visitation plan that was approved by the court. The new parenting plan kept sole legal custody with Mother but changed physical custody to joint physical custody between Mother and Father. The new custody plan granted Father alternating weekend, some midweek, alternating holidays, and extended summer parenting time ("parenting plan"). This is the parenting plan currently in effect and the parenting plan with which the court found Mother has failed to comply. Since

---

[1]"We view the evidence and all permissible inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences." *England v. England,* 454 S.W.3d 912, 915 n.1 (Mo. App. W.D. 2015).

2

2007, the parties' various motions have been heard by the same trial judge who issued the judgment of contempt currently on appeal.

The trial court's judgment of contempt was based on the court's finding that after August 12, 2014, and for a period of eight months, Mother willfully disobeyed the judgment and parenting plan and orchestrated Father's failure to receive parenting time with Daughter. There was no dispute that Father had no parenting time with Daughter during this period. The only issue before the trial court was whether the failure of Mother to comply with the judgment and parenting plan was due to her own intentional and contumacious conduct.

The following evidence was presented at the hearing on Father's motion for contempt. On August 12, 2014, Father went to Daughter's school to pick her up for parenting time. Daughter refused to go with Father and proceeded to the vehicle of Mother, who had also arrived at the school to retrieve Daughter. Mother and Daughter refused to speak to Father to discuss why Daughter was not joining him for parenting time, but rather remained in Mother's car with the windows rolled up. Father refused to leave because he wanted to exercise his parenting time and he requested that the school call the police. The police arrived and told Father they would not force Daughter to go with him, and they suggested he take his complaint to the court.

Following these events, Father attempted to pick up Daughter for parenting time on multiple occasions. Each time, Daughter refused to go with him. Mother refused to speak with Father on these occasions and, at least once, chose to video record Daughter's refusal to go with Father for his parenting time. Mother never said anything to Daughter

3

or Father on these occasions. Mother never encouraged Daughter to go with Father. Mother had previously told Father that there would be a time he would no longer be able to "bully us anymore." Father contacted Mother numerous times during this time period through email and text to try to arrange parenting time with Daughter.

Mother called Daughter as a witness and she testified that she had not recently spent parenting time with Father because she does not feel safe because Father gets angry and loses his temper. Daughter testified regarding the August incident at her school that she refused to go with Father because she wanted to adjust to her new school schedule and she had volleyball tryouts that afternoon. Describing their relationship, Daughter testified that she is scared because Father does not listen to her and gets angry.

Following the evidence, the trial court stated on the record:

> If [Daughter] is not making the decision, then who is making this decision? And it's the finding of the Court that it is [Mother] who is making this decision, who is orchestrating the failure of [Father] to receive his parenting time with his daughter.
> It is quite the history in this case. And, for the record, the allegations that we're talking about with regards to [Daughter] have been heard by the Court before. These are not new matters. We've plowed this field a couple times.
> And there have been well-orchestrated efforts to deny [Father] his visitation time. And, again, I believe we sit here with another well-orchestrated -- things were well thought out except for the answer to that question which was who is making the decision. And the additional question, if you told your daughter to go, would she go? And the Court believes that the answer to that is yes.
> The Court finds the evidence of [Mother] to not be credible in this matter. The Court finds that [Mother] has intentionally and contumaciously disregarded the Court's order in this matter.

The trial court found Mother in contempt of the trial court's judgment regarding parenting time.

4

The trial court initially stayed its judgment of contempt for thirty days to give Mother the chance to demonstrate that she understood the seriousness of the situation. The trial court's stay required Mother to pay a fine, schedule joint counseling sessions between Father and Daughter, pay for counseling, and pay Father's attorney's fees. A review hearing was conducted the following month at which time the trial court found that Mother had not complied or attempted to comply with the conditions of the stay of execution of its contempt order. The trial court entered a written judgment revoking the stay of execution and reinstating its warrant of commitment, finding Mother in contempt and committing her to the Jackson County Department of Corrections until such time as she purged herself of the contempt. Accordingly, the trial court's judgment of contempt is now ripe for appeal.[2] *See Bruns v. Bruns*, 186 S.W.3d 449, 451-52 (Mo. App. W.D. 2006). Mother now appeals.

## STANDARD OF REVIEW

"A trial court's judgment in a civil contempt proceeding will not be disturbed on appeal absent a clear abuse of discretion." *Walters v. Walters*, 181 S.W.3d 135, 138 (Mo. App. W.D. 2005). This court reviews the trial court's judgment of contempt under the

---

[2]After reinstating its warrant of commitment, the trial court entered an order permitting Mother's release from jail on a $7,500.00 bail bond. When a warrant of commitment results in the incarceration of a contemnor, and thus the enforcement of a civil contempt order, a trial court may, in its discretion, allow the contemnor to furnish bail pending appeal. *Teefy v. Teefy*, 533 S.W.2d 563, 566 (Mo. banc 1976). "[A]ppearance of the defendant is the primary objective of posting [a bail] bond, and the money on deposit will be returned if the defendant appears at all times." *Perry v. Aversman*, 168 S.W.3d 541, 545 (Mo. App. W.D. 2005). A bail bond is thus to be distinguished from a performance bond posted to insure payment of a contempt order's financial purge terms in the event an appeal is unsuccessful. *See Redden v. Dep't of Soc. Services,* 773 A.2d 1094, 1099 (Md. App. 2001) ("A non refundable bail toward an arrearages violates" the principle that the only legal purpose of bail is to assure attendance of an accused). Our cases have yet to definitively address whether the posting of a performance bond pending appeal to insure payment of a contempt order's financial purge terms is the equivalent of purging contempt. We need not resolve that issue. The parties agree that the $7,500 bond posted by Mother is a cash bail bond that is conditioned on Mother's remand to the custody of the Jackson County Department of Corrections if her appeal of the trial court's judgment of contempt is not successful.

standards enunciated for judge-tried actions in *Murphy v. Carron.*[3] *A.G. v. R.M.D.*, 730 S.W.2d 543, 545 (Mo. banc 1987). The judgment must be affirmed "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id.* (quoting *Murphy*, 536 S.W.2d at 32). "We defer to the trial court's credibility determinations and its weighing of the evidence." *Ream-Nelson v. Nelson*, 333 S.W.3d 22, 29 (Mo. App. W.D. 2010).

## ANALYSIS

In her sole point on appeal, Mother argues the trial court erred in holding her in contempt of court because its finding that she willfully, intentionally, and contumaciously disobeyed the court's parenting plan lacks substantial evidence to support that finding because there was no evidence that Mother had orchestrated Daughter's refusal to participate in parenting time with Father or that Mother had the ability to force Daughter to comply.

Civil contempt is "instituted to preserve and enforce the rights of a private party to an action and to compel obedience to a judgment or decree intended to benefit such a private party litigant." *A.G.*, 730 S.W.2d at 545 (quoting *State v. Koon*, 201 S.W.2d 446, 454 (Mo. banc 1947)). "A party alleging contempt establishes a prima facie case for civil contempt when the party proves: (1) the contemnor's obligation to perform an action as required by the decree; and (2) the contemnor's failure to meet the obligation." *Walters*, 181 S.W.3d at 138 (citing *Love v. Love*, 75 S.W.3d 747, 759 (Mo. App. W.D. 2002)).

---

[3] 536 S.W.2d 30 (Mo. banc 1976).

"The alleged contemnor then has the burden of proving that person's failure to act was not due to her own intentional and contumacious conduct." *Id.*; *see also A.G.*, 730 S.W.2d at 546 ("The movant bears the burden of demonstrating a violation of the court's orders. Then the alleged contemnor must prove the inability defense by showing inability which was not intentionally and contumaciously brought about").

The facts establishing Father's prima facie case for civil contempt are not in dispute. Mother has an obligation under the court's judgment to enforce the parenting plan and, for a period of eight months prior to trial, Daughter remained with Mother and Father did not receive parenting time with Daughter. The only question before us is whether the evidence supports the trial court's finding that Mother failed to prove that her failure to enforce the parenting plan was not due to her own intentional and contumacious conduct. Whether Mother's conduct was intentional and contumacious is a "fact-driven inquiry." *Basham v. Williams*, 239 S.W.3d 717, 727 (Mo. App. S.D. 2007). The trial court found that the evidence presented by Mother was not credible and that she had in fact orchestrated Father's failure to receive parenting time for this eight-month period. The court found that if Mother had told Daughter to go with Father, Father would have received his parenting time.

The trial court's findings are supported by the record. First, it is important to note that the trial court had extensive experience and many years of dealings with the parties in this case and was familiar with the parties and underlying disputes within the family. The trial court has determined that it is the best interest of the minor Daughter that she

participates in parenting time with Father.[4]  Second, the record supports a finding that Mother created the circumstances that encouraged Daughter to refuse to attend parenting time.  Contrary to Mother's general assertion that she encouraged Daughter to attend parenting time, testimony which the trial court found not credible, the record shows that when Father attempted to pick up Daughter for parenting time, Mother did not encourage Daughter to go.  In fact, regarding the August 12, 2014 incident at the school, Mother acknowledges that it was Father's parenting time and he properly came to the school to pick up Daughter, as the judgment required him to provide transportation for his parenting time.  Mother acknowledges she arrived at the school to pick her Daughter up, even though it was Father's parenting time, and allowed her Daughter to hide in her car and to refuse to leave with Father.  Mother remained silent on each and every other occasion Father tried to exercise his parenting time and did not take any action to encourage Daughter to accompany Father.  Further, on at least one occasion, Mother chose to video record her Daughter's refusal to go with Father for parenting time.

The evidence supports the trial court's finding that Mother's actions constituted not merely a lack of encouragement but also a deliberate undermining of Father and his efforts to spend time with Daughter to which he is entitled under the court's judgment and parenting plan.  *See Walters*, 181 S.W.3d at 139-40 (finding implicit and explicit undermining of authority of parent attempting to exercise parenting time as evidence of intentional and willful violation of court's order).

---

[4]To the extent Mother and/or Daughter believe that Father is not fit to receive parenting time, Mother does not have the option to refuse to abide by the court's judgment.  The proper remedy for Mother would be to seek a modification of the court's judgment.  To hold otherwise would allow Mother to unilaterally sever Father's parental rights.  *See A.G.*, 730 S.W.2d at 546-47.

Whether Mother's actions constituted intentional and contumacious failure to abide by the trial court's order is a fact-driven inquiry. *Basham*, 239 S.W.3d at 727. Therefore, reliance on previous cases is only useful insofar as the facts are analogous to the case at bar. Mother relies primarily on *Shanks v. Shanks* to support her position. 603 S.W.2d 46 (Mo. App. W.D. 1980). In *Shanks*, the father sought to have his former wife adjudged guilty of civil contempt for violating the court's order regarding his visitation rights with son. *Id*. Shortly after the dissolution of the marriage between mother and father, mother and son moved to Colorado while father remained in Missouri. *Id*. at 47. Pursuant to the court's judgment, son made his appointed monthly and vacation trips to Missouri. *Id*. However, when he turned twelve years old, son began refusing to visit his father. *Id*. The reasons provided by the son for his refusal were that he was engaged in sports and the trips to Missouri from Colorado would interfere with his athletic activities and that he was afraid of his father. *Id*. Critically, mother and son both testified that mother had always encouraged the son to visit his father and explained to him the court ruling and that she was required to comply. *Id*. at 48. Mother even volunteered to go with son each time on the plane to make the visit, but the son refused to board the plane. *Id*. The son emphatically refused to visit his father. *Id*. This court held that the trial court, under these facts, did not abuse its discretion in finding that the conduct of the mother in failing to enforce the court's order was not intentional and contumacious. *Id*.

Contrary to *Shanks*, the trial court found here that Mother was deliberately undermining Father's efforts to spend parenting time with Daughter. The trial court found Mother not to be credible when she claimed she encouraged Daughter to go with

9

Father. As explained above, Mother's actions in this case show that she did not encourage Daughter to spend time with Father, she obstructed Father's efforts to exercise his parenting time, and she facilitated Daughter's refusal to spend parenting time with Father. *Shanks* is inapposite to the facts as found here by the trial court. It was Mother's burden to prove she did not intentionally and contumaciously violate the court's order. We cannot say the trial court abused its discretion in finding that Mother has not met her burden.

The other cases relied upon by Mother are similarly distinct from the facts at bar. In *Morgan*, this court considered whether the trial court erred in granting the father's family access motion even though the court found the mother had not willfully or intentionally failed to comply with the court's visitation order. *Morgan v. Gaeth*, 273 S.W.3d 55, 57 (Mo. App. W.D. 2008). This court considered the meaning of the recent amendments to section 452.400[5] and found that the amendments intended to allow "a noncustodial parent to regain compensatory parenting time when the other parent denies or interferes with his original parenting time, even when the denial or interference was not willful or intentional." *Id*. at 60. We then reasoned that the trial court could find a parent not in contempt of a court's visitation order because the violation of the order was not willful or intentional, while at the same time concluding that the parent had denied or interfered with visitation without good cause, and thus could consistent with that finding grant the relief requested under a family access motion. *Id*. In *Morgan*, the trial court's finding that the non-movant had not acted willfully or intentionally in failing to comply

_____

[5] All statutory references are to RSMo 2000 cumulative as currently supplemented unless otherwise noted.

10

with the trial court's judgment was not challenged and, therefore, not addressed on appeal. The opinion provides no support for Mother's argument here that the trial court should have found Mother's actions not to have been in willful and contumacious defiance of the trial court's visitation judgment.

In *Basham*, the southern district of this court considered the appeal of the trial court's finding that the violation of its visitation order was not due to the father's intentional and contumacious conduct. *Basham*, 239 S.W.3d at 726-27. In that case, the father testified that he always encouraged son to visit mother and that he understood that son should not be making the decision whether to visit. *Id.* at 727. In *Basham*, the trial court did not believe the father had acted in a contumacious manner in failing to meet his obligations regarding visitation under the trial court's judgment. *Id.* There the court recognized that "[a]lthough many trial courts would have found [Father] guilty of contempt, we cannot say the trial court erred as a matter of law and that it did not have discretion to deny the motion." *Id.* As stated previously, these decisions are fact-driven inquiries and we defer to the discretion of the trial court so long as there is substantial evidence in the record to support the trial court's determination.

Mother also relies on *In re Marriage of S.G.*, 824 S.W.2d 109 (Mo. App. E.D. 1992). *S.G.*, however, is not relevant to the question before us. In *S.G.*, "[t]he child had been injured at mother's home, was upset by this treatment, and was afraid to return there. Father arranged a visit with the child's therapist by father, mother and the child, after which temporary visitation was resumed." *Id.* at 110. The trial court found father's denial of visitation was "for good reason and cause." *Id.* The court also stated there was

11

nothing in the record to suggest that the husband willfully and intentionally set out upon a course designed to deprive mother of visitation. *Id*. The court's finding that father had good cause in that case to deny visitation for one weekend does nothing to support Mother's argument here that her conduct over the eight-month period, discouraging and facilitating Daughter's refusal to visit Father, was not intentionally and contumaciously in violation of the trial court's order.

As this court has said multiple times, the trial court faces a herculean task of enforcing compliance with visitation orders while at the same time recognizing that parents face the sometimes difficult challenge of forcing children to do things they do not want to do. *See e.g., Shanks*, 603 S.W.2d at 48. In this case, the trial court did not abuse its discretion in finding that Mother intentionally and contumaciously orchestrated Daughter's refusal to attend parenting time through the encouragement and facilitation of such defiance as this finding was supported by substantial evidence.

The trial court found that Mother is financially capable of satisfying the contempt purging terms, and Mother makes no argument that she is financially incapable of satisfying such terms. Further, Mother makes no argument that the terms of the contempt judgment are not sufficiently clear so as to allow her to be able to determine exactly what acts she must undertake to purge her contempt. Mother holds the keys to the jail upon her compliance with the trial court's judgment.

The Point is denied.

## CONCLUSION

For the reasons explained herein, the judgment of the trial court is affirmed and the cause is remanded to the trial court for further proceedings consistent with this opinion. The Appellant is remanded to the custody of the Jackson County Department of Corrections to be held pursuant to the trial court's judgment of contempt.[6]

_____
Gary D. Witt, Judge

All concur

---

[6]Father's Motion to Dismiss Appellant's Brief for Failure to Comply with Rule 84.04, or, in the Alternative, Motion to Strike Preliminary Statement, Statement of Facts, Legal File and Appendix is hereby denied.