

# In the Missouri Court of Appeals
# Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| RONALD WUEBBELING, | ) | No. ED103501 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable John R. Essner |
| JILL CLARK, f/k/a JILL WUEBBELING, | ) | |
| | ) | |
| Appellant. | ) | FILED: August 9, 2106 |

Jill Clark, formerly known as Jill Wuebbeling ("Mother") appeals from the trial court's September 8, 2015 amended judgment and the trial court's July 24, 2015 judgment. The September 8, 2015 amended judgment granted the guardian ad litem's motion to amend and ordered Mother and Ronald Wuebbeling ("Father") to pay certain amounts for counseling services as well as outstanding guardian ad litem ("GAL") fees. The July 24, 2015 judgment, *inter alia*, sustained Father's motion for contempt and motion for family access and awarded compensatory time to him for Mother's denial of his custody for 24 days, and ordered Mother and the children to participate in counseling at Mother's expense; and sustained Father's motion to abate child support, abating Father's obligation to pay child support for the months of November 2014 through July 2015 and ordering Mother to reimburse Father for nine months of the child support. We dismiss in part, affirm in part, and reverse in part.

## I. Background

Mother and Father were divorced pursuant to an amended decree of dissolution on June 2, 2006. The judgment was modified on October 30, 2007. Injunctive orders regarding custody and visitation were entered on June 23, 2008, and December 3, 2008. The judgment was modified again on February 24, 2010, following a trial, which expanded Father's visitation time to receive custody of his two children, "Daughter" (born July 5, 2000), and "Son" (born September 10, 2003), on the first and third Fridays of each month at 6 p.m., extending until 4 p.m. on Saturday on the first weekend of the month but lasting until Sunday at 6 p.m. on the third weekend of each month. Father was additionally granted custody on various holidays and special days as well as for one week in the summer. The trial court noted, "The sad and frustrating history of the litigation between these two parents prior to this modification judgement is thoroughly detailed in the February 24, 2010 judgement." After that, the trial court approved the extension of services of the Family Court Exchange Center "in consideration of the contentious history of this family." Although Mother requested a temporary restraining order and argued that Father's time with the children should be supervised, the trial court denied such request in August 2014.

Father filed a motion for family access on August 1, 2014. He filed a motion for contempt on September 15, 2014, and he filed a motion for abatement of child support on October 27, 2014. Over several days in January, February, March and May of 2015, a hearing was conducted on the motions. The trial court issued its Judgment on July 24, 2015, regarding these three motions, sustaining Father's motion for contempt and awarding compensatory time for Mother's denial of his custody for 20 days in the months of July, August and mid-September of 2014; sustaining Father's motion for family access and awarding compensatory time for

2

Mother's denial of his custody time on four additional days on September 26, October 10 and 24, and November 7, 2014, and ordering Mother and the children to participate in counseling as detailed in an attached separate order at Mother's expense; denying Father's request for attorney's fees; sustaining Father's motion to abate child support, abating Father's obligation to pay child support for the months of November 2014 through July 2015 and ordering Mother to reimburse Father for nine months of the child support for a total of $8,271; and ordering Mother to reimburse Father for court costs in this matter including costs incurred for repeated attempts to serve Mother with summons, totaling $580. All parties filed post-trial motions. On September 8, 2015, the trial court issued an amended judgment granting the GAL's motion to amend, ordering Mother to pay $753.33 and Father to pay $661.66 to the counselor for his services and Mother to pay $1,813 and Father to pay $600 to the GAL for outstanding fees.

This appeal follows.

## II. Discussion

Mother alleges five points on appeal. In her first, second, and third points, Mother contends the trial court erred in finding Mother in contempt for interfering with Father's court-ordered visitation in July and August of 2014, erred in sustaining Father's Motion for Family Access and ordering Mother and the children participate in counseling, and erred in sustaining Father's Motion to Abate Child Support and ordering Mother to reimburse Father in the amount of $8,271, because the weight of the evidence shows Father failed to meet his burden to prove Mother caused the lost days of visitation, or that she denied or interfered with visitation without good cause. Mother argues (a) Father admitted he never went to the Exchange Center on these dates or made other arrangements with Mother for custody exchanges on these dates, as required by the Parenting Plan, (b) Mother did not contumaciously seek to deprive Father of his visitation

3

on these dates but made good faith efforts to follow the Parenting Plan, (c) the children, of sufficient age and maturity, independently and without influence of Mother, refused visitation with Father; and (d) Mother had good cause not to bring the children to the Exchange Center after Father physically and emotionally harmed the children at the Exchange Center to such an extent that the Exchange Center refused to provide further service to Father.

Fourth, Mother alleges the trial court erred in ordering Mother to pay the GAL the sum of $1,813 because it is an abuse of discretion under Section 452.423.5 to require Mother to pay seventy-five percent of the GAL fees, in that Father, through his conduct, necessitated the appointment of the GAL, and should have been required to pay all of the GAL fees in what Mother maintains has been a meritless series of motions.

Fifth and finally, Mother alleges the trial court erred in ordering Mother pay to John Borders the sum of $753.33 for counseling because the trial court lacked the authority to enforce a judgment it previously set aside, in that (a) the trial court sustained Mother's motion to set aside the order of August 8, 2014, with regard to counseling; (b) the fee order of $753.33 relates to counseling flowing from the order of August 8, 2014; and (c) a trial court has no authority to enforce a fee award when the underlying judgment for the fee award is void.

A.  Standard of Review

When reviewing a trial court's decision after a bench trial, we will sustain the judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law.  Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976).  In a civil contempt proceeding, an appellate court applies the same standard.  Ream-Nelson v. Nelson, 333 S.W.3d 22, 28 (Mo. App. 2010).  Moreover, "[a] trial court's judgment in a civil contempt proceeding will not be disturbed on appeal absent a clear

4

abuse of discretion." Id. "Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." Id. We defer to the trial court's determinations of credibility and view the evidence and the inferences that may be drawn therefrom in the light most favorable to the judgment. Vinson v. Adams, 192 S.W.3d 492, 494 (Mo. App. E.D. 2006). Where there is conflicting evidence, the trial court, in its discretion, may accept or reject all, part, or none of the testimony it hears. Id. "We exercise extreme caution in considering whether a judgment should be set aside on the ground that it is against the weight of the evidence, and will do so only upon a firm belief that the judgment was wrong." Id., quoting In re D.M.S., 96 S.W.3d 167, 171 (Mo. App. S.D. 2003).

B. Analysis

Point I: Motion for Contempt

We first address the motion for contempt Father filed on September 15, 2014, alleging repeated instances in which his custody time had been denied by Mother in August and September 2014, alleging Mother had not acted in such a way so as to foster the respect, love, and affection of the children for him but, rather, that she had acted to alienate the children from him. The trial court granted Father's motion and Mother alleges this to be in error.

Before addressing Mother's claims, this Court must, *sua sponte*, determine whether Mother has presented an appealable judgment of contempt. See Jones v. Jones, 296 S.W.3d 526, 528 (Mo. App. W.D. 2009). To be appealable, a civil contempt order must be final. In re Marriage of Crow and Gilmore, 103 S.W.3d 778, 780 (Mo. banc 2003).

"Where a contempt order has the purpose of coercing a party to comply with a court order rather than punishing a party to protect, preserve, and vindicate the power and dignity of

5

the court, the order is one for civil contempt." City of Pagedale v. Taylor, 790 S.W.2d 516, 518 (Mo. App. E.D. 1990). Here, the trial court noted Father's request that Mother pay a fine up to $500 for her noncompliance, but the court made no such order at this time "to emphasize that the intent of this order is not to punish Mother." Further, the trial court stated,

> The primary purpose of the court's remedy is to require Mother to work to improve the relationship between the children and Father and be supportive of a frequent and meaningful relationship between Father and the children. Father's request that counseling should be engaged in by all members of the family at Mother's expense as specifically provided for by the statute is sorely needed in this case. It is critical that such counseling begin immediately before the children's relationship with Father further degrades.

Because the trial court's contempt order was issued for the purpose of compelling Mother to comply with the court's orders regarding Father's custody time with his children, the trial court found Mother in civil contempt.

"'A party held to be in civil contempt has two options: (1) purge [herself] of the contempt by complying with the court's order, making the case moot and unappealable; or (2) appeal the order, but only after the court's order is enforced by incarceration or otherwise.'" Bruns v. Bruns, 186 S.W.3d 449, 452 (Mo. App. W.D. 2006) (quoting Lieurance v. Lieurance, 111 S.W.3d 445, 446 (Mo. App. E.D. 2003)). A finding of contempt is interlocutory only and is not final for purposes of appeal until it is actually enforced. Jones, 296 S.W.3d at 529. "Once a trial court has issued an order of commitment, then the contempt order 'changes from mere threat to "enforcement," and becomes final and appealable.'" Id. (quoting Gilmore, 103 S.W.3d at 782).

Here, the trial court ordered that Father's motion for contempt was sustained and awarded Father compensatory time for Mother's denial of his custody for 20 days in the months of July, August, and mid-September of 2014. The trial court ordered the time should be compensated on a gradual basis due to the severity of the breakdown in a relationship between Father and the

6

children, and that the schedule be developed by the counselor as that progress goes forward. Further, Mother was required to reimburse Father for court costs, including costs incurred for repeated attempts to serve Mother with summons, totaling $580. Additionally, the trial court's amended judgment ordered Mother to pay $753.33 to the counselor for his fees, and $1,813 for outstanding GAL fees. Although Mother filed an appeal bond, Mother does not assert, and the record does not contain, any indication that the above-stated order regarding compensatory time to Father has been "enforced." Beshers v. Beshers, 433 S.W.3d 498, 509 (Mo. App. S.D. 2014). "Where, as in this case, there is no commitment order and no showing that the contemnor has ever been arrested, confined, or posted bond, the contempt order is interlocutory only and not appealable." Id. Mother's first point is premature and therefore is dismissed.

Point II: Motion for Family Access

Second, Mother alleges the trial court erred in sustaining Father's Motion for Family Access and ordering Mother and children to participate in counseling because the weight of the evidence shows Father failed to meet his burden to prove Mother denied or interfered with visitation without good cause. Mother contends that Father admitted he never went to the Exchange Center on these dates or made other arrangements with Mother for custody exchanges on these dates, as required by the Parenting Plan; the children independently and without influence of Mother refused to go with Father for visitation; and Mother had good cause not to bring the children to the Exchange Center after Father physically and emotionally harmed the children at the Exchange Center to such an extent the Exchange Center refused to provide further service to Father.

The trial court found, based on the credible evidence presented, that Mother failed to prove that the children had independently, without any influence from her, refused to comply

7

with the parenting plan. The trial court found Mother had intentionally not complied with the custody schedule established in prior judgments, and she failed to prove that she had other good cause for her failure to comply with the parenting plan. The trial court noted that the evidence established that Mother has created a toxic atmosphere that has alienated the children from Father, comparing it to the toxic atmosphere described in Morgan v. Gaeth, 273 S.W.3d 55 (Mo. App. 2008) (finding the custody had been denied or interfered with by the mother without good cause where the problems stemmed from the mother's refusal to communicate or cooperate with the father, her failure to encourage the child to visit father without consequences, and her allowing the child to make decisions instead of herself). The trial court noted that the coordinator of the Exchange Center testified that this case was the most contentious case she had seen in 15 years of coordinating the program, and the court agreed. The trial court followed the Missouri Supreme Court's decision in A.G. v. R.M.D., 730 S.W.2d 543, 546-47 (Mo. banc 1987), stating, "if Mother truly believes that she can prove that it is not in the best interests of the children to be in Father's custody, then 'the proper remedy is for her to seek a modification of the court's orders. To hold otherwise would allow [Mother] to sever [Father's] parental rights unilaterally.'"

Upon reviewing the record, the evidence was such that Father was denied his custody rights without good cause on September 12 and 26, October 10 and 24, and November 7, 2014. At that time the exchanges at the Exchange Center were placed on inactive status because Mother informed the personnel of the Exchange Center that she would not be bringing the children for any future exchanges. No visits by the children happened from November 7 until the court ordered that an exchange of custody should happen at the Exchange Center on January 30, 2015. On that date, the maternal grandmother brought Son to the Exchange Center, but he

8

refused to allow Father to take custody and the visit did not occur. On the weekends of February 13 and 27, 2015, Father exercised custody but only of Son. Daughter has not been in Father's custody since August of 2014.

The court sustained Father's motion for family access, awarding him compensatory time for Mother's denial of his custody time on four additional days on September 26, October 10 and 24, and November 7, 2014. In addition, the trial court ordered Mother and the children to participate in counseling as detailed in a separate attached order, "Co-Parenting Counseling Referral Order," at Mother's expense.

Section 452.400.3 states, "If custody, visitation or third-party custody is denied or interfered with by a parent or third party without good cause, the aggrieved person may file a family access motion with the court stating the specific facts which constitute a violation of the judgment of dissolution." The denial need not be an intentional or willful act. Morgan v. Gaeth, 273 S.W.3d 55, 59 (Mo. App. W.D. 2008). "Good cause" in the context of the statute "requires that the parent's denial or interference with the other parent's visitation be reasonable to avoid the granting of a family access motion." Id. Reasonable also implies acting in good faith. Id.

As our appellate courts have noted numerous times, a trial court faces a "herculean task" of enforcing compliance with visitation orders while at the same time, recognizing that parents face the sometimes difficult challenge of forcing children to do things they do not want to do. D.R.P. v. M.P.P., 484 S.W.3d 822, 829 (Mo. App. W.D. 2016). Although Mother argues that the children stated under oath in open court that they chose to refuse visitation without any prompting or undue influence from Mother, the trial court found their testimony was not credible. Near the end of eleven-year-old Son's testimony, the trial court noted that the testimony was headed in a "really bad direction" as the witness was stating he did not like pizza,

his grandma, or anything, and Son agreed. Fourteen-year-old Daughter testified that Mother was not going to give her a consequence for not wanting to go with someone with whom she did not feel safe.[1] Daughter admitted that when Father texted her and Mother to have Daughter call him and Son, Mother did not ask her to call them. The record is clear that Mother did not encourage her children to communicate or have a positive relationship with Father.

Moreover, the Exchange Center's program coordinator, Sandra Ford, testified that on August 15, 2014, when Mother brought the children to the Exchange Center, she did not do anything in a positive way to promote the exchange of custody. Ms. Ford stated that both children came into the office at the Exchange Center and stated that they are afraid of their dad and refused to conduct the exchange. Ms. Ford testified that Mother was informed that she had to follow the court order and that the children had to go for their visitation. Mother told Ms. Ford that the kids were fearful of their dad and they weren't going. Although Mother argues that the Exchange Center terminated Father's ability to use it, Ms. Ford testified that the Exchange Center told the parties on November 7 that since no one was showing up, there was no need to contact the Exchange Center any further than that, after the Exchange Center received phone messages from Mother on August 29, September 12, and September 26, and again on every Friday through November 7, 2014, that the children were fearful of seeing their father and the police, so Mother was not bringing them to the Exchange Center. Ms. Ford said this was solely based on Mother's actions. Father testified that he told the Exchange Center that he did not want there to be a situation where he was not present and Mother showed up, even though she already

---

[1] Mother's motion for a temporary restraining order seeking a ruling that Father's custody time with children be supervised was denied by the trial court in an August 8, 2014 judgment. The trial court's judgment noted the forcible discipline Father had acknowledged but that the testimony of the children exaggerated the specifics. The court found: "The only allegation by Mother that appeared to be true is that the children do not now want to continue visits with Father. Unfortunately, the court believes that this is result of continuation of dysfunction of this family reflected repeatedly throughout their prolonged litigation since 2006 . . ."

said she was not going to do so. Father said he was informed by the Exchange Center that they would contact him and he would have time to get there. However, he never received a phone call and Mother never showed up. Father was denied custody for his vacation week but Mother questioned at the hearing why he did not come to the Exchange Center during his vacation week for a regular exchange. Further evidence was presented that Mother made a complaint with the Clayton police about the way the officer spoke to her child at the Exchange Center encounter. Mother testified that she told the children it was going to be okay and not to worry, but she could not recall saying anything else to encourage the children to go with their Father for visitations. The record indicates that Mother gave no repercussions to the children for refusing to go on visitations.

In its Judgment, the trial court compared this case to that in Morgan v. Gaeth, 273 S.W.3d at 55, in which the appellate court affirmed the trial court's judgment, finding that if a parent is noncompliant with a custody order, even unintentionally, a motion for family access might be granted if the parent lacked a good faith reason for their noncompliance. The court noted the legislature's intent to provide a noncustodial parent relief even if the denial or interference was not willful or intentional. Id. at 60. The trial court here similarly found Mother failed to comply with the custody schedule established in prior judgments, and failed to prove that she had other good cause for her failure to comply with the parenting plan.

As both Mother and Father are attorneys by profession, they should be familiar with the preamble of the Missouri rules of professional conduct, which provides that attorneys zealously must advance and protect their clients' legitimate interests "while maintaining a professional, courteous, and civil attitude towards all persons involved in the legal system." Mo. S. Ct. Rules of Prof. Conduct Rule 4, Preamble ¶ 9. Just as the nature of law practice encounters conflicting

11

responsibilities, so does the nature of parenting, especially when divorced. Although it is clear that Mother and Father here have been zealous in protecting their own interests, this Court fears that their children's legitimate interests are at stake as the parties have exemplified to the children behavior that has been less than "professional, courteous, and civil" in the public record of their family conflicts. We encourage the parties to take seriously the trial court's order for counseling as a way to reestablish their own reputations with their children and, by example, mold the children into exemplary adults.

In this difficult case where the children stand to lose the most, we cannot find that the trial court abused its discretion in sustaining Father's Motion for Family Access and ordering Mother and children to participate in counseling. Mother's second point is denied.

Point III: Motion to Abate Child Support

In her third point, Mother argues the trial court erred in sustaining Father's Motion to Abate Child Support and ordering Mother to reimburse Father in the amount of $8,271 because the weight of the evidence shows Father failed to meet his burden to prove Mother denied or interfered with visitation without good cause. Mother argues the same reasons here as she did in her second point related to the motion for family access.

Section 452.340.7 states, "A court with jurisdiction may abate, in whole or in part, any past or future obligation of support . . . if it finds that a parent has, without good cause, failed to provide visitation . . . to the other parent pursuant to the terms of a judgment of dissolution . . . or modification thereof." Father must prove, and the evidence must show, that Mother failed to provide visitation as set forth in the Parenting Plan, and did so without good cause. Cule v. Cule, 457 S.W.3d 858, 863-64 (Mo. App. E.D. 2015); Harris v. Parman, 54 S.W.3d 679, 684 (Mo. App. S.D. 2001).

12

As discussed in Point II, above, the trial court found that the children did not testify credibly and the evidence was such that Mother created a toxic atmosphere and, without good cause, did nothing to encourage a relationship between the children and their Father, including failing to encourage them to go on visitations and supporting their decisions to refuse visitation. While Mother claims that denial of visitation was reasonable based on the inability to force the children to visit Father and the fears and concerns for their safety and well-being, the trial court found that her lack of any effort whatsoever in facilitating a visitation and instead, her promoting the toxic environment that tested Father's temper was not good cause. The evidence on the record shows that Mother does not allow her children to make their own decisions in all matters, but argues they are old enough to "independently" choose to refuse visitation, even at ages eleven and fourteen. The Exchange Center typically did not allow a child to decide whether they went with a parent until they were an adult, or age 18, although Ms. Ford said they usually did not force a 17 ½-year-old child if the child says he did not want to go.

The evidence on the record supports the trial court's decision to abate child support as Father proved he was denied visitation without good cause during the months of July and August of 2014, as well as September 12 and 26, October 10 and 24, and November 7, 2014. The trial court did not abuse its discretion. Mother's third point is denied.

Point IV: Payment to GAL

Next, Mother alleges the trial court erred in ordering her to pay the GAL a sum of $1,813. Mother argues this was an abuse of discretion under Section 452.423.5 to require Mother to pay 75% of the GAL fees because Father, through his conduct, necessitated the appointment of the GAL and should have been required to pay all of the GAL fees in what Mother maintains has been a meritless series of motions.

13

Section 452.423.5 states, "The guardian ad litem shall be awarded a reasonable fee for such services to be set by the court. The court, in its discretion, may . . . (2) Award such fees as a judgment to be paid by any party to the proceedings." When ordering the payment of the guardian ad litem fees, "the court may consider the circumstances which necessitated the appointment of the guardian." Lindell v. Coen, 896 S.W.2d 525, 529 (Mo. App. 1995).

Mother argues here that Father initiated the current litigation by filing the motion for contempt and motion for family access. She also argues the scope of this case and fees associated with the GAL resulted solely from the inappropriate actions of Father. However, the record shows that the trial court first noted that a GAL was not necessary for a family access motion because it was attempting to enforce a previous order. Despite the court's position that the children need not testify again, Mother's counsel argued that the children were necessary to defend Mother's position in the motions and stated that there were a number of times that Mother reported hearsay information from the children. The trial court acknowledged that if the children were going to testify, it would appoint a GAL again. Father objected to the appointment of the GAL in this motion because there were no allegations of abuse and neglect here and he did not think a GAL was necessary. The trial court noted that it had discretion to appoint a GAL and believed that appointing the GAL here, Mr. Kiesewetter, was best because he was familiar with the history of the case and, as a result, would be more economical to the parties. When the GAL was appointed, he represented the interests of the two children while they were questioned.

As the trial court found, the GAL's appointment resulted from Mother's insistence on them testifying to bolster her position that they refused to visit Father without any influence by Mother. However, the trial court found their testimony was not credible. The trial court thus had discretion in assigning more fees for the GAL to Mother, who necessitated the GAL's

14

appointment, as the trial court did here. Father, who filed the motions at issue, was left with some of the GAL's fees as well, even though his motions did not require the appointment of the GAL until Mother insisted that that children testify. We find the trial court did not abuse its discretion in ordering Mother to pay the portion of the GAL fees that it did. Mother's fourth point is denied.

Point V: Payment to Counselor

Finally, Mother alleges the trial court erred in ordering Mother to pay John Borders the sum or $753.33 because the trial court lacked the authority to enforce a judgment it previously set aside, in that the trial court sustained Mother's motion to set aside the order of August 8, 2014, with regard to counseling; the fee order relates to counseling flowing from the August 8, 2014 order; and the trial court has no authority to enforce a fee award when the underlying judgment for the fee award is void.

Included in the Legal File is Mother's Motion to Set Aside Judgment with Regard to Order of Counseling, filed on February 17, 2015. It was called, argued and submitted in May of 2015. Mother argued that while she was requesting a temporary restraining order, the trial court denied her request but then went beyond the requested relief in modifying the parenting plan by ordering the counseling. On the same day, the case was submitted on the evidence presented with regard to Father's motions for contempt, motion to abate child support, and motion for family access order. However, the Legal File shows that the record was left open for the GAL and Mr. Borders' billing by May 20, 2015. In the trial court's July 24, 2015 judgment on Father's motions for contempt, abating child support, and family access, the trial court noted, "This court has sustained Mother's motion to set aside the provisions of the August [8 judgment] pertaining to counseling. Therefore, that allegation in Father's motion for contempt concerning

15

participation in counseling has not been considered by this court."  However, in the trial court's amended judgment of September 8, 2015, the trial court ordered Father to pay $661.66 and Mother to pay $753.33 to John Borders for his counseling services.

The authority for the court to act on Mother's restraining order was based on Section 452.400.1 regarding supervised visitation.  It does not reference an order for counseling.  Thus, Mother argues that the trial court's order relating to the counselor's fees should be set aside based on Rule 74.06(b)(4).  Father, on the other hand, argued to the trial court that Mother requested "such other and further" relief left to the court's discretion, and that Mother's argument was moot since it was followed.  The GAL added that the trial court has the authority to act in the children's best interest as a court of equity.

Mother contends that Mr. Borders testified his counseling fees related solely to the order of August 8, 2014 – the order the trial court set aside.  She therefore argues the trial court lacked authority to order Mother to pay Mr. Borders because a court cannot enforce a non-existent judgment.  In his testimony, Mr. Borders acknowledged that Mother had paid him some already, but there was some outstanding, including the costs for the hearing that day as well as conversations with the GAL regarding the proceedings.

Rule 74.06(b)(4) provides that the court may relieve a party from a final judgment or order if the judgment is void.  A void judgment is "[o]ne which has no legal force or effect, the invalidity of which may be asserted by any person whose rights are affected at any time and at any place directly or collaterally."  Kerth v. Polestar Entm't, 325 S.W.3d 373, 388 (Mo. App. E.D. 2010) (internal quotations omitted).  A judgment is void if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process.  Id.  "When a statute speaks in jurisdictional terms or can be read in such terms, it is

16

proper to read it as merely setting statutory limits on remedies or elements of claims for relief that courts may grant." J.C.W. ex rel. Webb v. Wyciskalla, 275 S.W.3d 249, 255 (Mo. banc 2009). Moreover, a court may not enforce a fee award when the underlying judgment was itself void. Carpenter v. Carpenter, 159 S.W. 3d 880, 882-84 (Mo. App. S.D. 2005).

Here, in its July 24, 2015 judgment, the trial court sustained the motion filed by Mother to set aside the August 8, 2014 order for counseling. In so doing, the order for counseling became null and void, even though the parties had already participated in counseling. Because the trial court set aside the counseling order of August 8, 2014, the trial court also had no authority to order the parties in its September 8, 2015 amended judgment to pay for the counseling services it had no authority to order in the first place.[2] Accordingly, the trial court's amended judgment ordering the parties to pay John Borders for counseling services is reversed. Mother's fifth point is granted.

### III. Conclusion

The judgment of the trial court is dismissed in part, affirmed in part, and reversed in part.

_____
ROY L. RICHTER, Judge

Robert G. Dowd, Jr., P.J., concurs.
Mary K. Hoff, J., concurs.

---

[2] Although we acknowledge that the counseling services have been rendered, and thus, the clients have received the benefits therefrom, we decline to comment how those services must be paid apart from the court's order here.

17