

# In the Missouri Court of Appeals
## Eastern District

<u>DIVISION THREE</u>

| | | |
|---|---|---|
| RONALD WUEBBELING, | ) | No. ED106663 |
| | ) | |
| Petitioner/Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | |
| JILL WUEBBELING, | ) | Honorable John R. Essner |
| n/k/a JILL CLARK | ) | |
| | ) | |
| Respondent/Appellant. | ) | Filed: May 7, 2019 |

### Introduction

Jill Clark, formerly Jill Wuebbeling (Mother), appeals from the judgment of the trial court finding her in contempt of court, abating child support she was awarded for two minor children from Ronald Wuebbeling (Father), and awarding Father attorney's fees. We affirm in part, reverse in part, and remand the case with instructions.

### Facts and Background

Mother and Father divorced in 2006. There were two children of their marriage: Daughter, age 18 at the time of this appeal, and Son, age 15. At the time of divorce Mother was awarded sole legal and physical custody of the children, with Father granted visitation. Father was ordered to pay Mother child support.

Since that time, a great deal of litigation has taken place between Father and Mother, largely around custody and visitation. In 2006, the trial court granted Father's post-trial motion

awarding him joint legal and physical custody of the children. Several months later, Mother filed for a temporary restraining order against Father, which was granted. In 2007, Mother filed another motion to modify as well as another order of protection. Thereafter, the trial court ordered Father to have an interlock system installed on his vehicle.

In 2008, more litigation ensued. Mother filed for another temporary restraining order, and Father filed a motion to enforce judgment and for sanctions. After the hearing, the trial court found Father had placed the children in danger by driving while intoxicated during his custody period. The trial court ordered custody exchanges to take place at the Family Court Exchange Center. Father was ordered to submit to a breathalyzer test before and after custody exchanges.

In 2010, the trial court awarded joint legal custody between the parents, with sole physical custody for Mother and visitation for Father. Father was again ordered to submit to breathalyzer tests before exchanges. In 2014, Mother filed for a temporary restraining order. This order was denied. The trial court noted the continuing family dysfunction and ordered the parties to begin counseling.

Later in 2014, Father filed a motion for contempt and a motion for abatement of child support. In July 2015, Father's motions for contempt and child support abatement were granted. The trial court found Mother had withheld visitation from Father and awarded him compensatory visitation time; Mother had repeatedly failed in her obligation to foster a relationship between Father and the children; and Mother had spoken to the children about Father's alcohol problem, despite no "credible proof" Father had had a problem with alcohol for the past "several years." Mother appealed from this judgment, which was largely affirmed, but reversed on the trial court's order for Mother to pay counseling fees. Wuebbeling v. Clark, 502 S.W.3d 676 (Mo. App. E.D. 2016).

Accompanying the trial court's July 2015 judgment was an order for Mother and Father to engage in further co-parenting counseling (counseling order). According to the trial court, the purpose of the counseling was to "educate Mother of the importance of providing the children with a continuing and meaningful relationship with both of their parents and to assist in reestablishing a relationship between the children and father." The counseling order stated the counselor was to "exercise [his] independent objective judgment in conducting the counseling program." Also included in the counseling order were the following two provisions:

> 3. Mother and Father are ordered to cooperate with the counselor and facilitate the children's participation in all aspects of the counseling program, including but not limited to scheduling and keeping appointments for themselves as requested by the counselor, providing information and records, completing any questionnaires and assessment instruments, and submitting to psychological testing and any other reasonable methods that he may employ in this therapy.

> 4. Mother and Father will cooperate with the counselor if necessary to briefly deviate from any existing custody and visitation schedule to permit the minor children to spend periods of time in the care of each parent as deemed necessary by him. This is not to be a change in visitation or custody but is for therapy purposes only.

In November 2016, Father filed a Motion for Contempt and a Motion for Abatement of Child Support. The allegations in these motions were similar: Father alleged Mother had not complied with the counseling order to begin and participate in counseling, and that Father had not had visitation with the children pursuant to the existing visitation schedule laid out elsewhere in the Parenting Plan. The Motion for Contempt prayed the court order Mother to show cause for her refusal to comply with the 2015 counseling order, as well as her failure to comply with the visitation schedule pursuant to the Parenting Plan. The Motion for Abatement prayed the court enter an order pursuant to Section 452.340.7 abating Father's child support obligations retroactively to entry of the counseling order, the time Father alleges Mother began violating the visitation schedule. The motion also prayed the court should abate Father's child support

3

prospectively until such time as Mother complies with the court-ordered visitation schedule. Father also requested an award of attorney's fees.

A hearing was held on Father's motion in January 2018. The first witness to testify was Rick Orlando (Orlando), the counselor who provided services to the family pursuant to the 2015 counseling order. Orlando testified he had received the counseling order issued by the court, and it was his understanding his role was to assist in reuniting Father with the children. Orlando stated he met with Mother initially in October 2015. Mother informed him of the court's finding she had created a toxic environment for the children and caused their alienation from Father. At this appointment, Orlando provided Mother with information about the importance of the children having a relationship with both parents.

After this initial appointment, Mother returned with the children for their counseling appointment with Orlando. Orlando testified that during this session the children told him they did not want to see their father. They told Orlando Father drank alcohol frequently and had driven under the influence of alcohol while they were in the car. The children also told Orlando that Father frequently had issues with anger and had been physically violent toward them. Daughter related to Orlando an instance when Father slapped her, pushed her to the ground, and forced her to stand in a corner for several hours. Both children told Orlando they were afraid to spend time with Father.

Orlando next met with Father. Orlando testified when he related the children's concerns to Father, he felt Father minimized them. Orlando recalled Father confirming he drank alcohol, but telling Orlando he did not have a problem with alcohol as the children claimed. Nevertheless, Orlando recommended Father seek anger management or alcohol addiction classes, or both, in order to begin repairing his relationship with the children. Orlando admitted

4

he did not confirm whether the children's accusations were true or not. Rather, Orlando felt it was significant that, regardless of what had actually occurred, the children genuinely believed their father had problems with alcohol and anger. In Orlando's view, Father taking steps to address these issues would, if nothing else, demonstrate to the children he sincerely wanted to repair their relationship.

After the session, Orlando contacted Mother and told her he was recommending the children have no further visitation with Father until he sought help for alcohol and anger issues. Orlando also proposed to Mother a counseling session among the children, Father, and her. Sometime later, Mother and Orlando spoke again, and she informed Orlando the children refused to meet with Father in counseling at that time. Orlando did not thereafter contact either party to request further counseling appointments be scheduled. When asked why he did not direct the parties to set further appointments, he stated it was not his practice to do so. Orlando stated he considered it to be incumbent on patients to set their own appointments, and never directs his patients to make appointments. Orlando also testified that, to his knowledge, Father never sought treatment for anger or alcohol issues.

The children's guardian *ad litem* (GAL) testified at the hearing. The GAL stated he had arranged to have Orlando counsel the family. The GAL testified that, in his opinion, Father did have issues with alcohol, although the GAL had never recommended to the court Father receive treatment.

Mother and Father also testified at the hearing. Father testified contrary to Orlando, stating Orlando had never made any recommendations he seek treatment for his anger or alcohol issues. Father testified he had received no visitation with the children since August 2015, despite numerous emails and messages he sent Mother to try to arrange it.

5

Mother testified she had never received such messages from Father. Mother also testified she believed she had complied with the counseling order and had done everything Orlando had asked her to do. When asked why she did not make any further appointments after the children refused to see their Father with Orlando, she stated she believed the counselor had communicated that there should be no further counseling until Father took affirmative steps to address his anger and alcohol issues. She also testified she was unable to exchange the children with Father, because at some point in the past their exchanges had become so disruptive the Family Exchange Center had banned them from the premises, and so she did not have the ability to exchange the children with Father.

After taking the matter under submission, the court entered judgment granting both Father's Motion for Contempt and Motion for Abatement of Child Support. This judgment was accompanied by findings of fact and conclusions of law. The court found Mother did not violate the counseling order with respect to when she initiated counseling. However, it did find Mother violated the provision of the counseling order requiring her "to facilitate the children's participation in all aspects of the counseling program." In the court's view, Mother failing to schedule a counseling appointment involving the children and Father together, which had been proposed by the counselor, amounted to contravening the counseling order. Additionally, the court found Mother's stated reason, that she believed the counselor had directed her not to continue counseling until Father complied with his recommendations to seek alcohol and anger counseling, to be contrary to what Orlando had testified he had told Mother, which was that *visitation* was to be suspended until Father sought help. Thus, the trial court found Mother's excuse to be incredible and her defiance of the court order to be contumacious.

6

The court also found Mother had not complied with the existing visitation schedule by not exchanging the children with Father since entry of the 2015 counseling order, and she had done so without good cause. Therefore, the court ordered Father's child support obligations to Mother retroactively abated from August 2015 through January 2018, as well as prospectively until Mother complies with the orders of the court. Father's request for attorney's fees was also granted.

Finally, the court noted that although Father claimed at the hearing Orlando never recommended he receive treatment for alcohol and anger issues, his testimony was contradicted by a correspondence between Orlando and Father where the recommendation was repeated. Going forward, the court suggested Father seek the help Orlando suggested, if only to "address those ideas that have been put into the minds of the children as a result of Wife's actions and statements." As of the time of oral argument in the instant appeal, Father had not sought any alcohol or anger management counseling.

Points Relied On

Mother makes four claims of error on appeal. Point I claims the trial court erred in finding Mother in contempt of the counseling order. Mother asserts a number of grounds for this alleged error, including the trial court's order was too vague and indefinite to enforce in contempt. Point II claims the trial court erred in finding her in contempt for violating the visitation schedule, partially on those same grounds. Points III and IV claim the trial court erred by awarding Father child support abatement and attorney's fees, respectively, because the contempt findings upon which the awards were based were erroneous.

<u>Appealability of Contempt Judgment</u>

In Mother's prior appeal, this Court ruled the trial court's previous contempt judgment was not appealable, as it was not a final judgment. <u>Wuebbeling</u>, 502 S.W.3d at 680-81. In his brief, Father presents no arguments regarding the substantive merits of Mother's first two points on appeal. Rather, Father argues that, like Mother's prior appeal with this Court, she has failed to present an appealable contempt judgment and so we must again dismiss her appeal.

Father is correct this Court must consider first whether Mother presents a final, appealable judgment before we may review her claims. <u>Jones v. Jones</u>, 296 S.W.3d 526, 528 (Mo. App. W.D. 2009). After consideration, we conclude she has.

"Where a contempt order has the purpose of coercing a party to comply with a court order rather than punishing a party to protect, preserve, and vindicate the power and dignity of the court, the order is one for civil contempt." <u>City of Pagedale v. Taylor</u>, 790 S.W.2d 516, 518 (Mo. App. E.D. 1990). Here, the trial court's judgment explicitly states its purpose is not to punish Mother but to coerce her into complying with the court's orders. Therefore, Mother was found in civil contempt.

Being found in civil contempt, Mother has two options: (1) purge herself of contempt by complying with the trial court's order, which makes the case moot and unappealable, or (2) appeal the order, but only after the judgment is finalized via enforcement. <u>Bruns v. Bruns</u>, 186 S.W.3d 449, 452 (Mo. App. W.D. 2006). "Civil contempt orders are considered to be final judgments when they are 'enforced.'" <u>Edmondson v. Edwards</u>, 280 S.W.3d 752, 759 (Mo. App. S.D. 2009), quoting <u>In re Marriage of Crow and Gilmore</u>, 103 S.W.3d 778, 780 (Mo. banc 2003). Until enforcement occurs, the judgment is interlocutory and unappealable. <u>Id.</u> "When 'enforcement' occurs depends on the remedy." <u>In re Marriage of Crow</u>, 103 S.W.3d at 778.

8

In order to determine in this case whether the judgment of contempt has been "enforced," we must first determine what, if any, remedy or sanction the trial court imposed for Mother's contempt. Then, we must determine whether such a remedy has yet been enforced.

Generally speaking, the two most common remedies for enforcing civil contempt are imprisonment and *per diem* fines. Id. at 781 (citation omitted). An order for imprisonment is "enforced" when there is "actual incarceration pursuant to a warrant [or order] of commitment." Id., quoting In re Marriage of Beaver, 954 S.W.2d 717, 721 (Mo. App. S.D. 1997). When the remedy is a *per diem* fine, the "enforcement" occurs when the aggrieved party executes on the fine. In re Marriage of Crow, 103 S.W.3d at 781 (citations omitted).

However, imprisonment and a *per diem* fine are not the exclusive sanctions a trial court may order upon a judgment of contempt. In certain circumstances it is within the authority of the court to order other sanctions, provided they are calculated to bring about the purpose of compelling the offending party to comply with the court's orders or compensate the aggrieved party. For instance, fines for actual damages suffered by the moving party have been held to be an appropriate sanction for civil contempt. See Levis v. Markee, 771 S.W.2d 928, 932 (Mo. App. E.D. 1989) (holding an award of $190 for wasted plane ticket appropriate sanction for contempt).

In the instant case, the trial court's judgment finding Mother in contempt levies three separate sanctions against her: abatement of child support from August 2015 through January 2018; a prospective abatement of child support until Mother complies with the trial court's orders; and an award of attorney's fees. The issue is whether any of these remedies is "enforcement" of the civil contempt judgment.

First, we determine whether the trial court ordered these remedies on the basis of its finding Mother in civil contempt. A cursory examination of the judgment reveals it did. Although the trial court derived its authority to order the child support abatement from Section 452.340.7,[1] all of the findings and conclusions upon which it ultimately based the award were premised on Mother's alleged contempt of the court's prior orders. The section of the trial court's judgment granting the abatement contains no independent findings of fact or conclusions of law supporting the award; it merely references the court's earlier findings in the section holding Mother in contempt. This is unsurprising, because although Father filed two separate motions, one for contempt and one to abate child support, the allegations in the motions are almost identical. In short, the factual basis and legal conclusions the trial court relied on to order the abatement are so bound to the trial court's judgment of contempt that the former seems entirely premised on the latter.

This is even more clear in the trial court's award of attorney's fees, which it awards to Father based on "Mother's continued contemptuous actions." Again, although the trial court derived authority to order attorney's fees from Section 452.355, its basis for doing so was so inextricably bound to the judgment of contempt it is clear the award was to punish Mother for her contempt.

The question remains whether any of these sanctions have yet been "enforced," such that the contempt judgment is final and now appealable.

We conclude that, at a minimum, the prospective abatement of child support is sufficiently self-enforcing such that we may now review the substance of Mother's claims. On the basis of the judgment of contempt, the trial court awarded Father a prospective abatement of

---

[1] All statutory references are to RSMo 2016.

10

child support until such time Mother purges herself of contempt. This remedy functions similarly to a *per diem* fine that accumulates until the contemnor purges himself of contempt.

Further, unlike an order for a *per diem* fine, there is no need to show Father has executed on the abatement to show the order is final. As of the date of the order's entry, Mother is deprived of those child support payments to which she would otherwise be entitled but for the contempt judgment. There is no need for Father to take any further action to "enforce" the prospective abatement – it is self-enforced upon entry of the trial court's judgment. There is no need for any further evidence to show enforcement of the trial court's contempt judgment beyond the face of the order itself. See Edmonson, 280 S.W.3d at 757-58 (civil contempt judgment final where its enforcement is not conditional on the performance or nonperformance of future acts).

Review of Mother's contempt judgment is supported by the case of Walters v. Walters, 181 S.W.3d 135 (Mo. App. W.D. 2005). There, as here, the mother was found in civil contempt, and father was granted an abatement in child support, both retroactive and prospective. Id. at 137-38. In addition, mother was sentenced to two days in jail, without a means of purging her contempt and securing release before the end of that period. Id. at 141-42. The Western District noted that a jail sentence of a prescribed period, which did not include a provision for release upon the contemnor purging herself of contempt, was not an allowable sanction for civil contempt. Id. at 142-43. However, because mother had already served her sentence before appealing, the issue was moot and not reviewable. Id. at 143. Regardless, the court still opted to review the merits of the underlying contempt judgment, which was only enforced by retroactive and prospective abatement of father's child support obligation. Id. at 138-40. This precedent

11

supports our review of Mother's judgment of contempt, which, as in Walters, is enforced by retroactive and prospective abatement of Father's child support obligations.

At oral argument Father was asked how this Court could review Mother's third and fourth points without reviewing the substantive basis of the judgment of contempt, considering how the former is premised on the latter. Father responded by arguing we should not review any part of Mother's appeal, and dismiss it entirely. We take this to mean Father concedes the entirety of Mother's appeal is inexorably bound with the trial court's contempt findings, such that it all stands or falls together. But in Father's view this means Mother's entire appeal fails on procedural grounds, and no part may be reviewed by a court of error. With this we cannot agree. An order for abatement of child support under Section 452.340 and for attorney's fees under Section 452.355 are, in the normal course, appealable final judgments which are within our jurisdiction to review. See, generally, Wuebbeling, 502 S.W.3d at 684. Adopting Father's suggestion would mean Mother is left with final judgments against her which are unreviewable by this Court. Mother has a statutory right to appeal from a final judgment. Section 512.020. We will not deny her this right on dubious procedural grounds.

Because we find the trial court's judgment of contempt against Mother to be a final judgment, we go on to review the merits of Mother's points.

### Standard of Review

"As in any court tried matter, in a civil contempt proceeding this court will affirm the judgment unless there is no substantial evidence to support the decision, the decision is against the weight of the evidence, or the decision erroneously declares or applies the law." Ream-Nelson v. Nelson, 333 S.W.3d 22, 28 (Mo. App. W.D. 2010) (citation and internal quotation marks omitted). Further, this Court will not reverse the trial court's ruling on a civil contempt

12

motion absent a clear abuse of discretion.  Id.  "Judicial discretion has been abused when the trial court's ruling is clearly against the logic of the circumstance then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration."  Stuart v. Ford, 292 S.W.3d 508, 513 (Mo. App. S.D. 2009) (citation and internal quotation marks omitted).

"We defer to the trial court's determinations of credibility and view the evidence and inference that may be drawn therefrom in the light most favorable to the judgment." Wuebbeling, 502 S.W.3d at 679, citing Vinson v. Adams, 192 S.W.3d 492, 494 (Mo. App. E.D. 2006).  "Where there is conflicting evidence, the trial court, in its discretion, may accept or reject all, part, or none of the testimony it hears."  Id.

In reviewing a court-tried case, this Court will affirm the judgment reached if it is sustainable on any grounds.  TracFone Wireless, Inc. v. City of Springfield, 557 S.W.3d 439, 444 (Mo. App. S.D. 2018).  "Generally speaking, this means that prejudice will not be found in a bench-tried case unless an appellant shows that there was no authorized route by which the trial court could have arrived at its result."  Id.  "This Court is primarily concerned with the correctness of the result, not the route taken by the trial court to reach it; the trial court's judgment will be affirmed if it is correct on any ground supported by the record, regardless of whether the trial court relied on that ground."  Missouri Soybean Ass'n v. Missouri Clean Water Com'n, 102 S.W.3d 10, 22 (Mo. banc 2003) (citations omitted).

### Point I

In her first point, Mother claims the trial court erred by finding her in contempt of the provision of the counseling order requiring her to participate, and facilitate the children's participation, in counseling.  Amongst the grounds she argues is the trial court misapplied the

13

law, in that the provision the trial court found her to be in contempt of was too vague and indefinite to support a contempt finding. On this point we agree.

In order to establish a claim for civil contempt, the moving party must prove: (1) the alleged contemnor had an obligation to perform or refrain from some action under a court order, and (2) the alleged contemnor failed to meet that obligation. Walters, 181 S.W.3d at 138, citing Love v. Love, 75 S.W.3d 747, 759 (Mo. App. W.D. 2002). If the moving party proves these two elements, then the burden will shift to the contemnor to prove they did not fail in their obligation contumaciously. Id.

"To support a charge of contempt for disobedience of a judgment, decree or order, the court's pronouncement may not be expanded by implication in the contempt proceeding and must be so definite and specific as to leave no reasonable basis for doubt of its meaning." Carter County R-1 School Dist. v. Palmer, 627 S.W.2d 664, 665 (Mo. App. S.D. 1982). Before a court may impose sanctions on a party for disobeying a court order, the order itself must "precisely advise the individual of what conduct is forbidden." State ex rel. Girard v. Percich, 557 S.W.2d 25, 37 (Mo. App. St. L. 1977). Given that a possible sanction for disobeying a court order is imprisonment, clarity in the order itself is essential so the process may "comport with fundamental principles of fairness...." Id.

The trial court's 2015 order directing the parties to obtain counseling contained the following provision:

> 3. Mother and Father are ordered to cooperate with the counselor and *facilitate the children's participation in all aspects of the counseling program*, including but not limited to *scheduling and keeping appointments for themselves as requested by the counselor*, providing information and records, completing any questionnaires and assessment instruments, submitting to psychological testing and any other reasonable methods that he may employ in this therapy.

(Emphasis added.)

14

In our view, this particular directive in the order is too vague to impose a duty on Mother to schedule an appointment to which the children objected, and which the counselor did not request, such that Mother should be held in contempt.

In its judgment, the trial court noted the 2015 counseling order required Mother "to facilitate the children's participation in all aspects of the counseling program." It went on to hold "counseling was terminated by Mother's refusal to arrange the *proposed* meeting with Father, the children and Mother present." The trial court also noted Orlando "testified that it was not his practice to set up further meetings if one of the parties refuses to cooperate in the process."

We begin by noting the trial court did not find Mother in contempt of the directive of the provision ordering parties to "schedule[e] and keep[] appointments for themselves as requested by the counselor." Nor could it have, as Mother was not contravening that directive. First, the order directs the parties to keep appointments for themselves; it does not mention making or keeping appointments for the children. Second, there was no appointment made for the children, nor was there one requested by Orlando. What Orlando testified at the hearing was that he *proposed* a possible meeting among the children, Mother, and Father. Mother asked the children if they would be willing, the children said they were not, and Mother relayed this response to Orlando. As far as the record shows, that was the end of the discussion. Orlando did not thereafter invoke his authority under the counseling order to schedule the session despite the children's refusal. Rather, as he testified, his practice was to allow patients to schedule their own appointments. Presumably, the trial court was unaware of this policy when it ordered Mother and Father to comply with Orlando's requests to schedule appointments that he would never make.

15

But as stated, the trial court did not find Mother contravened the directive requiring her to keep appointments requested by Orlando. Rather, it relied on the more general directive requiring both parties to "facilitate the children's participation" in counseling. In our view, this directive is too vague to impose a duty on Mother to schedule a particular appointment to which the children objected, and which the counselor did not mandate, request, or demand.

The provision of which Mother was held in contempt contains no language explicitly ordering Mother take the children against their will to meet with Father during counseling. So in finding Mother in contempt, the trial court appears to have felt such a duty was implied from the words "facilitate" and "participation." However, the trial court is without authority to expand its prior orders by implication in order to hold Mother in contempt; she may be held in contempt only of the express directives of a court order, about which there are no reasonable bases to doubt their meaning. Palmer, 627 S.W.2d at 665. There is a sufficient reasonable basis to doubt whether "facilitating participation" necessarily encompasses taking the children against their will to that particular appointment, especially considering Father's lack of compliance with the counselor's recommendations he seek alcohol and anger treatment.

To be clear, we do not base this decision wholly, or even substantially, on the fact the children objected to the appointment. When there is a clear mandate from a court a parent must deliver the children to some place at some time, such as scheduled visitation with the other parent, the mere fact the children do not want to go is not sufficient reason to disobey the court. This is especially true where the reluctance of the children has been deliberately cultivated by that parent. See D.R.P. v. M.P.P., 484 S.W.3d 822, 829 (Mo. App. W.D. 2016). However, predicate to such an obligation is a clear and unambiguous directive from the court. Again, in our view, the phrase "facilitat[ing] the children's participation in all aspects of the counseling

16

program" is not "so definite and specific" as to give rise to a duty for Mother to have made and kept that particular appointment, such that she can be held in contempt for not doing so. Palmer, 627 S.W.2d at 665.

In holding as we do, we remain aware of the unenviable task the trial court has in trying to resolve the many dysfunctions that have plagued this family for many years. Unfortunately, counseling did not turn out to be the panacea the trial court had hoped. While it is within the trial court's power to order the parents to participate in counseling, it is beyond its power to dictate the outcome. We believe professional counseling can be an invaluable resource to help parents resolve disputes and co-parent effectively. However, such a resource is wasted when both parties refuse to cooperate in the process. Here the record shows neither Mother nor Father took full advantage of Orlando's assistance. While we hold Mother was not in contempt of the counseling order, it is clear from her lack of follow-up she was not an enthusiastic participant in the counseling process. Similarly, Father never took the steps recommended by Orlando to repair his relationship with his children. In the trial court's judgment finding Mother in contempt, the trial court again implored Father to enroll in anger management classes and seek help for alcohol abuse. As of the date of oral argument on this appeal, Father admits he has done neither.

Because the provision of the counseling order relied on by the trial court to impose a duty on Mother to schedule an appointment for counseling between the children and Father was too vague to impose such a duty, the trial court erred by finding Mother in contempt of that provision.

Mother next claims the trial court erred by finding her in contempt for violating the visitation schedule, in part because the trial court's orders were vague and indefinite. On this point we agree as well.

The law and standard of review are identical to that discussed in Point I. Most relevantly, in order "[t]o support a charge of contempt for disobedience of a judgment, decree or order, the court's pronouncement may not be expanded by implication in the contempt proceeding and must be so definite and specific as to leave no reasonable basis for doubt of its meaning." Palmer, 627 S.W.2d at 665.

> With regard to visitation, the July 2015 counseling order contained a provision stating:
>
> 4. Mother and Father will cooperate with the counselor if necessary to *briefly deviate from any existing custody and visitation schedule* to permit the minor children to spend periods of time in the care of each parent as deemed necessary by him. *This is not to be a change in visitation or custody* but is for therapy purposes only.

(Emphasis added.)

After Father met with Orlando in November 2015, Orlando contacted Mother and told her he recommended visitation with Father be suspended until Father sought treatment for anger and alcohol issues. As stated, Father never followed Orlando's recommendations. Regardless, the trial court still found Mother in contempt of the original visitation schedule for not arranging exchanges with Father.

The record here is not sufficiently developed for us to determine how long Orlando's recommendation to suspend Father's visitation was in effect. Orlando recommended the visitation be suspended until Father sought treatment, but Father never sought treatment, and Mother did not schedule further counseling appointments. It stands to reason that, since neither

18

party was interacting with the counselor, at some point the counseling must have "ended," albeit with nothing resolved. And because visitation was to be suspended for "therapy purposes only," once neither party was participating in the therapy, the recommendation to suspend visitation must have ended as well, and Mother's obligation to provide visitation to Father resumed. But the trial court made no factual findings as to when Mother's obligation to provide visitation ended or resumed. Instead, relying on the portion of the provision stating the counseling order "is not to be a change in visitation or custody," the trial court held "[t]he judgment entered on July 24, 2015 did not suspend the [original] custody schedule…," thus holding Mother in contempt for failing to provide visitation for the *entire* time period between entry of the counseling order in July 2015 and entry of the judgment from which Mother appeals.

Taken together, the existing visitation schedule and the 2015 counseling order are too vague and indefinite to support the trial court's finding. The counseling order directs parties to both "cooperate with the counselor…to briefly deviate from any existing custody and visitation schedule" while simultaneously directing them to comply with the original visitation schedule. On its face, this provision subjects the parties to inconsistent obligations. Clearly the trial court contemplated the counselor might direct Mother and Father to deviate from the existing visitation schedule for therapeutic purposes. But when the counselor recommends such a deviation, the trial court's order creates a dilemma: either they must ignore the counselor and adhere to the existing schedule, in violation of the provision's first directive; or comply with the counselor and ignore the existing visitation schedule, in violation of the provision's second directive. This is precisely what occurred here, as the trial court held Mother responsible for denying visitation for the entire period between entry of the counseling order and entry of the

19

judgment in the instant case, including the time during which Orlando recommended visitation be suspended.

Notably, however, this dilemma is not triggered until the counselor recommends a deviation from the existing parenting schedule. The counseling order was entered July 2015. Orlando did not make his recommendation to suspend Father's visitation until sometime in November 2015. Until that time, the original visitation schedule was in effect. Yet Father credibly testified he had received no visitation during that period. This leaves a three-month period during which Mother was in contempt of the existing visitation schedule.

In her brief, Mother argues she is excused from complying with the visitation schedule for the entire period between entry of the counseling order in July 2015 and entry of the judgment from which she appeals. She claims this is because the Parenting Plan was ambiguous as to what would happen should the Family Exchange Center become unavailable as a place to exchange the children, which it had, due to the past disruptiveness of their exchanges.[2] But by Mother's own admission, the Parenting Plan contained no such ambiguity. In her brief Mother admits the Parenting Plan states that, should the Family Exchange Center become unavailable for a custody exchange, the parties must confer and mutually agree on an alternative. At the hearing, Father testified he reached out to Mother on a number of occasions about establishing a new location to exchange the children. Mother testified he had never done so. The trial court found Father credible on this point, and we defer to that credibility determination. Wuebbeling, 502 S.W.3d at 679. The record shows Mother never conferred with Father to establish a new exchange location during the period the original visitation schedule was in effect. Therefore, the

---

[2] We note that, even after this Court requested Mother file the missing exhibits referred to in her brief, Mother has not made available to this Court the Parenting Plan or visitation schedule of which the trial court found her in contempt. However, because the record contains sufficient references to its relevant terms, we complete our review of Mother's claim.

trial court correctly determined Mother contravened the existing visitation schedule, at least for some of the period between the entry of the counseling order and the judgment in the instant case.[3]

In summary, on Point II we affirm in part and reverse in part:  We affirm the trial court's finding Mother in contempt from the entry of the counseling order in July 2015 until Orlando recommended Father's visitation be suspended.  We also affirm to the extent the trial court found Mother in contempt for denying visitation for the period after counseling ended until entry of the judgment of contempt.  However, we reverse the trial court's finding that Mother was in contempt from the time Orlando recommended Father have no visitation with the children until such time as it can be said both parties had abandoned counseling and Orlando's recommendation was no longer in effect.  In our view, taken together, the original visitation schedule and the 2015 counseling order subjected Mother to inconsistent obligations, and she should not be held in contempt for complying with one where that necessarily meant violating the other.

Point III

In her third point, Mother argues the trial court erred by abating Father's child support obligation from entry of the July 2015 judgment until entry of the judgment finding her in contempt.  Mother largely repeats her same arguments from Point II.

The trial court ordered Father's child support obligation to abate pursuant to Section 452.340.7.  This section reads, in relevant part:

---

[3] Mother also claims she proved any noncompliance was not contumacious, and thus she was not in contempt. However, this section of her brief merely repeats her argument she did not disobey the court's order because Father never contacted her to set up a new exchange location. As stated, the trial court found Mother lacked credibility when she testified, and we defer to the trial court's credibility determinations. Wuebbeling, 502 S.W.3d at 679. Because Mother points to no other evidence to show her lack of contumaciousness, we do not further address this argument.

A court with jurisdiction may abate, in whole or in part, any past or future obligation of support…if it finds that a parent has, without good cause, failed to provide visitation or physical and legal or physical or legal custody to the other parent pursuant to the terms of a judgment of dissolution, legal separation or modifications therefrom.

As stated above, we find the trial court erred in holding Mother violated the court's orders regarding visitation from the time Orlando recommended Father have no visitation until such time as it can be said neither party was participating in the counseling process. However, a careful reading of the statute reveals there is no requirement the amount of the child support abatement be proportional to the period during which the aggrieved party was denied visitation. Rather, the statute authorizes the trial court to "abate, in whole or in part, *any* past or future obligation of support…" upon a finding the parent has withheld visitation without good cause (emphasis added). The trial court was correct when it found Mother had withheld scheduled visitation without good cause from the entry of the 2015 counseling order until Orlando recommended visitation with Father be suspended, and then after counseling had been abandoned by both parties until entry of the latest judgment of contempt. Under the plain language of the statute, this finding is sufficient to give the trial court authority to abate any of Father's child support obligations, past or future.

However, it is clear from the face of the judgment the trial court intended to abate child support only for the period during which Mother was in contempt of the visitation schedule. Although the record is sufficient to sustain the trial court's judgment, given the clear intent of the trial court to punish Mother only for the period during which she *wrongfully* withheld visitation, we cannot say the trial court's error was immaterial. Section 512.160. Therefore, in the interests of justice, we reverse the trial court's judgment and remand the cause with instructions for the trial court to enter a new judgment in accordance with this opinion. Upon remand, the trial court

22

will still possess broad discretion to dispose of the case. Should the trial court choose to hold further evidentiary hearings to determine when Orlando's recommendation to suspend visitation was in effect, it may do so. Alternatively it may, at its discretion, alter the abatement award upon consideration of both its previous findings and this Court's opinion. Or, the trial court may choose to enter a judgment awarding the same abatement, as it is authorized to do under the statute.

Point IV

In her final point, Mother claims the award of attorney's fees must be reversed because the rest of the judgment requires reversal, citing Morgan v. Morgan, 497 S.W.3d 359, 380 (Mo. App. E.D. 2016). We do not address this particular argument, as we do not reverse the entire judgment.

The trial court relied on Section 452.355 in awarding Father attorney's fees. However, Section 452.355 is the statute governing the allocation of costs for actions to prosecute nonpayment of child support. This was not such an action. Thus the trial court invoked, and the parties have argued about, the incorrect statute.

The trial court still possessed authority to order attorney's fees under Section 452.340.7. This provision states, "The court *shall* also award, if requested and for good cause shown, reasonable expenses, attorney's fees and court costs incurred by the prevailing party." (Emphasis added.) Father requested an award of attorney's fees in his motions; he showed good cause in that he established the litigation was necessitated by Mother's continuing contempt of the trial court's orders; and he was the prevailing party. Although the trial court invoked the incorrect statute in awarding attorney's fees, it reached the correct result, and therefore we affirm. TracFone Wireless, Inc., 557 S.W.3d at 444.

23

<u>Conclusion</u>

We affirm the trial court's judgment in part and reverse in part.  The case is remanded with instructions for the trial court to enter a new judgment in accordance with this opinion.  The trial may also choose to hold an evidentiary hearing to determine the effective dates of Orlando's recommendation that Father's visitation be suspended.

_Sherri B. Sullivan_
SHERRI B. SULLIVAN, P.J.

James M. Dowd, J., and
Robin Ransom, J., concur.

24