In the Missouri Court of Appeals
 Eastern District
 DIVISION TWO

CHEMLINE INCORPORATED, ) No. ED108603
 )
 Respondent, ) Appeal from the Circuit Court
 ) of Saint Louis County
v. ) 18SL-CC04666
 )
TIMOTHY MAUZY ) Honorable Kristine A. Kerr
 )
 Appellant. ) Filed: March 2, 2021

 Introduction

 Timothy Mauzy (“Mauzy”) appeals from the trial court’s judgment finding him in

contempt of an injunction order that prohibited him from contacting certain customers from his

previous employment with Chemline Incorporated (“Chemline”). The contempt judgment also

assessed a $2,000.00 compensatory fine based on this contemptuous conduct and awarded

Chemline $6,000.00 in attorneys’ fees. Mauzy asserts three points on appeal, arguing the trial

court erred in: finding him in contempt because the injunction order did not clearly,

unambiguously, and expressly prohibit his complained-of conduct (Point I); assessing the

compensatory fine because there was no evidence that Chemline suffered actual damages (Point

II); and awarding attorneys’ fees to Chemline because Mauzy did not violate the injunction order

 1
(Point III). We affirm in part and reverse and remand in part for further proceedings consistent

with this opinion. 1

 Factual and Procedural Background

 For over five years, Mauzy was employed by Chemline as a sales representative.

Chemline required its sales representatives to enter into restrictive covenants, which included

non-competition and non-solicitation provisions. In May of 2018, Mauzy left his employment

with Chemline and began working in a sales capacity at IXS Coatings. Both IXS Coatings and

Chemline are in the business of providing custom coatings for use in industrial and commercial

applications and are direct marketplace competitors.

 In December of 2018, Chemline filed a petition for injunctive relief and damages based

on allegations that Mauzy had violated the non-competition and non-solicitation provisions of his

employment agreement. On March 11, 2019, the trial court entered an order of permanent

injunction (“the Order”) prohibiting Mauzy from, in relevant part, contacting five customers with

whom Mauzy had a relationship during his employment at Chemline: Albers Spray Solutions,

Benchmark Foam, the Protective Group/Point Blank, BP Surface Solutions, and Alberts

Industrial Coatings. It is undisputed that Mauzy contacted individuals who were employed by

these customers during the twelve-month period covered by the Order. Testimony found

credible by the trial court established that: Mauzy met Matt Frey (“Frey”) of Benchmark Foam in

person on or about July 10, 2019, and otherwise contacted Frey over thirty times; and Mauzy

contacted Clay Butler of BP Surface Solutions and was contacted by Seth Albers of Albers Spray

Solutions.

1
 We deny Chemline’s motion for attorneys’ fees related to this appeal, which this Court ordered taken with the case.

 2
 On July 19, 2019, Chemline filed a motion for contempt and to show cause alleging that

Mauzy’s interactions with Frey constituted a willful violation of the Order. The trial court found

that Mauzy engaged in willful disobedience of the Order, entered a judgment of contempt, and

awarded Chemline $6,000.00 in attorney’s fees. The trial court also ordered Mauzy to pay a

$2,000.00 compensatory fine to Chemline after finding that Mauzy had interfered with

Chemline’s business relationships, despite also finding “that Chemline cannot demonstrate a

quantified diminution in their business sales as a result of [Mauzy’s] complained-of conduct.”

 This appeal follows.

 Standard of Review

 We review a contempt judgment under the same standard as other court-tried matters,

announced in Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). Wuebbeling v.

Wuebbeling, 574 S.W.3d 317, 327 (Mo. App. E.D. 2019). That is, we will affirm the judgment

unless it is not supported by substantial evidence, it is against the weight of the evidence, or it

erroneously declares or applies the law. Id. On review, we defer to the trial court’s credibility

determinations and recognize the trial court is free to accept or reject all, part, or none of the

testimony presented. Id. We view the evidence and inferences therefrom in the light most

favorable to the judgment and we will affirm if the judgment can be sustained on any ground

supported by the record. Id. Moreover, “we will not reverse the trial court’s ruling on a civil

contempt motion absent a clear abuse of discretion.” Id. An abuse of discretion occurs when the

trial court’s ruling is clearly against the logic of the circumstances and is so arbitrary and

unreasonable as to shock our sense of justice and indicate a lack of careful consideration. Id.

 Discussion

 Point I

 3
 In his first point on appeal, Mauzy argues the trial court erred in finding him in contempt

because his complained-of conduct was not clearly, unambiguously, and expressly prohibited by

the Order. We disagree.

 To be found in civil contempt, the record must show: (1) an individual had an obligation

to perform or refrain from some action under a court order, and (2) the individual failed to meet

that obligation. Id. The judgment, order, or decree supporting a contempt charge “must

precisely advise the individual of what conduct is forbidden,” meaning that the directive “must

be so definite and specific as to leave no reasonable basis for doubt of its meaning” and it may

not be expanded by implication in a contempt proceeding. Id. at 328–29 (internal quotations and

citation omitted). Therefore, in reviewing a trial court’s judgment of contempt, we are guided by

the express dictates of the court order which the contemnor is alleged to have disobeyed. The

general rules of construction apply and thus “[w]ords and clauses used in the order, judgment or

decree must be construed in accordance with their natural import.” Carter Cty. R-1 Sch. Dist. v.

Palmer, 627 S.W.2d 664, 665 (Mo. App. S.D. 1982).

 i. No reasonable basis exists to doubt that the Order’s directive prohibited Mauzy’s
 complained-of conduct

 Mauzy does not challenge the trial court’s findings regarding his complained-of

conduct—namely, that he was in contact with employees of the prohibited company customers

during the twelve-month period specified in the Order—and only challenges the conclusion that

such conduct violated a clear and unambiguous directive of the Order. Mauzy advances two

arguments for why his conduct was not clearly prohibited and why he cannot therefore be found

in contempt. First, Mauzy contends the Order only specifically prohibited him from contacting

the listed companies and not their individual employees. Second, Mauzy contends the nature of

this contact was wholly personal—not sales- or business-related—and that the Order did not

 4
prohibit maintaining personal relationships with individual employees of the listed companies.

We disagree and address each argument in turn.

 a. The prohibition on contacting company customers includes the individual
 company employees at issue here

 We first address Mauzy’s argument that he cannot be found in contempt because the

Order only prohibited him from contacting the listed company customers, which does not

encompass individual employees of those companies. In support of this construction, Mauzy

argues that a business entity is separate and distinct from its employees and that, because the

Order only lists the company names, Mauzy was only prohibited from, “for example, sending a

solicitous or introductory letter, fax, or email to the Companies’ attention, appearing at their

physical offices, or calling their general phone line.” 2 We disagree.

 Under the circumstances here, the prohibition on contacting the company customers

encompasses the employee contact points with whom Mauzy closely worked. This

understanding is supported by substantial evidence in the record. Indeed, both at the injunction

hearing and the contempt hearing, the parties and their attorneys interchangeably utilized terms

such as the names of the companies, “customers,” “accounts,” and the individual points of

contact to refer to the same conceptual customer entities. For example:

  Mauzy’s statements equated the company customers and the individual employee
 contacts, such as: “I contacted most of the customers that I had become close with
 ...” followed by “I had known those guys for quite some time, became friends
 with them…”; and answering the question “[o]ther than Matt Frey at Benchmark

2
 Mauzy also supports this argument by contrasting the language covering the companies—whose names are listed—
with the language outlining Mauzy’s prohibited actions—which explicitly covers Mauzy and his “agents, servants,
and employees or anyone acting on his behalf.” We are not persuaded by this difference in language. It is not
reasonably understood that language referring to one individual would include the conduct of any other individual
unless specifically stated; conversely, it is reasonably understood under the circumstances here that listing a company
name would include sales-related points of contact. Moreover, it is “common practice to make [an] injunction run to
classes of persons through whom the enjoined party may act, such as agents, servants, employees, aiders, abettors,
etc.” so that the enjoined party may not easily circumvent any obligations. Chem. Fireproofing Corp. v. Bronska, 542
S.W.2d 74, 80 n.1 (Mo. App. 1976) (internal quotations and citation omitted).

 5
 Foam, what other customers listed in [the Order] have you contacted?” with “I
 have contacted or I’ve been in contact with on occasion Seth Albers from Albers
 Spray Solutions, and some of the employees at BP Surface Solutions.”

  Chemline’s founder and CEO equated Benchmark Foam with Frey by stating
 “[Mauzy’s] been in contact with Benchmark, who has no problem letting us know
 that he talks to Tim [Mauzy] almost weekly,” specifically stating that the “he”
 referred to was Frey.

  Mauzy’s counsel equated the company customer accounts and the individual
 employee contacts, asking Mauzy: “So earlier you testified that you contacted a
 number of other customers or accounts. Were you contacting these individuals in
 their capacity as individuals because you considered them friends?”; and “you
 have not solicited any business from those five companies since March 11? …
 Indirectly solicit[ed] anything, tried to hint to those people that you wanted them
 to buy from you?”

 In addition, this reading of the Order is reasonable and expected given the protectable

interest at issue. “Customer contacts are a protectable commodity because goodwill develops

between the customers and the employer through its employees whose job it is to meet and

converse with the customer while representing the employer.” Systematic Bus. Servs., Inc. v.

Bratten, 162 S.W.3d 41, 51 (Mo. App. W.D. 2005).

 [T]he rationale for protecting ‘customer contacts’ is that, in the sales industry,
 a customer’s goodwill toward a company is often attached to the employer’s
 individual sales representative, and the employer’s product or service becomes
 associated in the customer’s mind with that representative. The sales employee
 is thus placed in a position to exert a special influence over the customer and
 entice that customer’s business away from the employer.

Id. (internal quotations and citations omitted). Customer contacts are protectable due to the

personal nature of sales and the effort undertaken by sales representatives to build goodwill with

customers, frequently through individual personal relationships. See Healthcare Servs. of the

Ozarks, Inc. v. Copeland, 198 S.W.3d 604, 611 (Mo. banc 2006) (defining protectable contacts

as “essentially the influence an employee acquires over his employer’s customers through

 6
personal contact”) (internal quotations and citation omitted). Here, all parties testified to the

importance of personal relationships in the coatings sales business and to the time, effort, and

money expended to develop close relationships with individual points of contact at company

customers.

 Given the above, it would be illogical that the Order’s prohibition on contacting company

customers would only apply to the companies’ formal front offices, as Mauzy contends. Rather,

the Order’s prohibition on contacting customers is reasonably understood to cover both the

formal front offices and the individual points of contact and relationships that Chemline—

through Mauzy—had spent time, effort, and money developing. Accord Systematic Bus. Servs.,

162 S.W.3d at 51–52 (analyzing former employee’s ability “to influence relevant contact

persons” and “decision makers located at Respondents’ customers” during discussion of

restrictive covenant prohibiting soliciting business from Respondents’ “customers”).

 Simply because the Order does not exhaustively list the individual customer contacts

covered by the prohibition does not mean it is so vague that Mauzy cannot be held in contempt

thereof. In this regard we find instructive State ex rel. Girard v. Percich, 557 S.W.2d 25, 40

(Mo. App. 1977). In Girard, the court was presented with the question of whether union

members could be found in contempt for adopting a policy of following customers, even where

the underlying restraining order “did not specifically forbid following.” Id. at 28, 34, 40. In

affirming, the court explained that such conduct was included in the order’s express prohibition

on “intimidation, harassment, and coercion of customers,” reasoning that:

 [t]he meaning of these terms is clear to one acting in good faith. The court was
 not required to denominate every type of prohibited conduct which would
 intimidate, harass and coerce customers. Use of generic terms was sufficient to
 give petitioners fair warning. If they questioned the permissibility of this
 practice, the proper course was a motion to modify the order, not reckless
 disobedience of its literal terms.

 7
Id. at 40.

 Similar to Girard, we find the meaning of the Order’s prohibition on contacting company

customers “clear to one acting in good faith,” given the way the parties employed the relevant

terms throughout this litigation and given the protectable interest at issue. We therefore find no

error in the trial court’s conclusion that the Order’s express prohibition on contacting the listed

company customers encompassed individual company employees who served as Mauzy’s points

of contact and with whom Chemline spent time, money, and effort developing relationships.

 b. The prohibition on “contacting” encompasses all forms of contact, not only
 those explicitly for the purpose of soliciting business

 We also disagree with Mauzy’s argument that the Order’s prohibition on “contacting” the

company customers encompassed only business-related solicitation and not personal

communication. The Order’s express directive prohibited Mauzy from “contacting” the listed

customers, with no limitations.

 The Order’s prohibition on “contacting” must be construed in accordance with the natural

import of the verb “to contact.” See Carter Cty., 627 S.W.2d at 665 (words and clauses “must be

construed in accordance with their natural import”). Webster’s Dictionary defines “contact” as a

transitive verb that means “to enter or be in contact with: join” and “to get in communication

with.” Contact, Webster’s Dictionary (3d ed. 2002). Therefore, under the plain terms of the

Order, Mauzy was prohibited from engaging in all forms of communication with the listed

company customers and employee contacts. 3

3
 Indeed, Mauzy admitted at the contempt hearing that his argument was not based on the express language of the
Order itself:
 Q [Chemline’s counsel]: “But if I understand your affidavit correct[ly], what you believe that
 the Court Order says is you couldn’t solicit him?
 A [Mauzy]: That’s correct.
 Q: Can you point to this Court Order, and take your time, point to this Court Order and tell me
 where it says you can contact him but you can’t solicit him?
 A: No, it doesn’t say that.

 8
 Although Mauzy argues that a prohibition on all forms of communication is unenforceable,

the enforceability of the Order is not before this Court and a challenge to clarify or modify the

Order should have been brought prior to an appeal from a contempt judgment. See Girard, 557

S.W.2d at 40 (“[i]f [contemnors] questioned the permissibility of this practice, the proper course

was a motion to modify the order, not reckless disobedience of its literal terms”).

 Where one has a genuine doubt as to whether his proposed conduct would be
 violative of the order because of its alleged vagueness, the proper procedure is not
 to act in reckless disregard of the potential restraint imposed. Once a court of
 general jurisdiction, having equity powers, issues an order upon pleadings properly
 before it, the order must be scrupulously obeyed even though it may prove to be
 erroneous. It is the function of the court in the first instance to judge the legality of
 its decision and until that decision is modified or reversed it must be respected
 under pain of contempt. Any attack on the propriety of the order must be by judicial
 process and not willful disobedience.

 Id. at 37–38. Here, Mauzy testified he knew of the Order and its terms, considered

himself bound by it, and did not appeal or otherwise challenge the Order. Therefore, the Order

stands as written and we give its words their natural import. See Carter Cty., 627 S.W.2d at 665

(general rules of construction apply in contempt proceedings and “[w]ords and clauses used in

the order, judgment or decree must be construed in accordance with their natural import”).

 We find no error in the trial court’s conclusion that the Order’s prohibition on

“contacting” encompassed all communications.

 ii. Because Mauzy’s undisputed conduct violated the Order’s express prohibition on
 contacting the listed customers, Mauzy can be held in contempt thereof

 ***
 Q: But again I’m not asking your understanding I’m asking where does it say you can contact
 him but you can’t solicit him?
 A: I don’t see it in either of these paragraphs [of the Order].
 ***
 A: Again, my assumption was that I could continue to maintain friendships as long as I didn’t
 solicit their business.
 Q: But you agree with me that’s not what the Court Order says, right?
 A: That’s not what’s written.

 9
 On the record here, there are no reasonable bases to doubt the meaning of the Order’s

express prohibition on contacting the named company customers. Given this conclusion and that

the parties do not dispute Mauzy’s conduct, we affirm the trial court’s judgment of contempt. It

is undisputed that Mauzy’s main points of contact at the prohibited company customers were the

same employees with whom he had built personal relationships for sales purposes and with

whom he was in contact after leaving Chemline; namely, Frey, Mr. Albers, and Mr. Butler. It is

similarly undisputed that Mauzy was in contact with these individuals during the twelve-month

period following the Order, including “talk[ing] regularly” to Frey. Therefore, the trial court did

not err in finding Mauzy in contempt of the Order’s express prohibition on contacting the

company customers during the twelve-month period following entry of the Order.

 Point I is denied.

 Point II

 In his second point on appeal, Mauzy argues the trial court erred in assessing the

$2,000.00 compensatory fine because there was no evidence that Chemline suffered actual

damages as a result of his contemptuous conduct. 4 We agree and remand to the trial court for

reconsideration of the compensatory fine.

 “Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for

either or both of two purposes: to coerce the defendant into compliance with the court’s order,

and to compensate the complainant for losses sustained.” Frantz v. Frantz, 488 S.W.3d 167, 172

(Mo. App. E.D. 2016). The latter “compensatory fines” are available in the discretion of the trial

court to compensate the party whose rights were prejudiced by the contempt. In re Marriage of

4
 Mauzy asserts the trial court’s judgment in this case was one of civil, not criminal, contempt. Chemline does not
contest this characterization and, given the circumstances of this case, we assume the judgment here was one of civil
contempt.

 10
Hunt, 933 S.W.2d 437, 448–49 (Mo. App. S.D. 1996). Because its purpose is remedial, a

compensatory fine must be related to the actual damage suffered by the complainant for injury

caused by the contemptuous conduct. Id. at 449. Unless is it related to actual damages, an

outright fine is generally “not appropriate for civil contempt because it is not designed to cure

but is intended to punish.” Levis v. Markee, 771 S.W.2d 928, 932 (Mo. App. E.D. 1989).

 Chemline argues the compensatory award here was properly based on lost profits and

damaged business relationships, which are inherently difficult to reduce to a specific monetary

value. Although “lost-profits determinations are based on estimations of prospective or

anticipated profits and cannot be expected to operate as an exact science,” Gateway Foam

Insulators, Inc. v. Jokerst Paving & Contracting, Inc., 279 S.W.3d 179, 186 (Mo. banc 2009),

Chemline did not present any evidence of lost profits. As the Gateway Foam court noted, “a

party must produce evidence that provides an adequate basis for estimating the lost profits with

reasonable certainty.” Id. (internal quotations and citation omitted). Here, despite the trial

court’s finding that Mauzy’s willful disobedience of the Order had “weakened and placed

divisions in the relationship between Benchmark and Chemline,” we are unable to find any

evidence in the record of the valuation of such diminished relationships or of other monetary

losses. Most importantly, we cannot ignore the trial court’s express finding “that Chemline

cannot demonstrate a quantified diminution in their business sales as a result of [Mauzy’s]

complained-of conduct.”

 Because the trial court expressly found that Chemline could not demonstrate a quantified

diminution in business sales due to Mauzy’s contemptuous conduct and because there is no other

evidence in the record of the value of any resulting loss to Chemline, the trial court had nothing

before it on which to base a “compensatory fine.” See Tashma v. Nucrown, Inc., 23 S.W.3d 248,

 11
252 (Mo. App. E.D. 2000) (finding “compensatory” contempt fine improper where complainant

“never testified nor produced any evidence of any monetary loss suffered under the agreement”

and where accountant testified complainant was not owed any money); Levis, 771 S.W.2d at 932

(finding error in “compensatory” contempt fine of $1,500.00 where there was no evidence

amount was compensatory or related to actual damages suffered); Angell v. Angell, 674 S.W.2d

147, 149 (Mo. App. W.D. 1984) (finding civil contempt fine improper where “there [was] no

evidence as to the value of the property which [complainant] contended remained missing … nor

did the order finding [contemnor] in contempt make any finding as to the value of the property

taken and retained by [contemnor]”).

 On the record here, the trial court erred in assessing the $2,000.00 fine and we remand for

reconsideration of the propriety of a compensatory fine. See Tashma, 23 S.W.3d at 253

(remanding for reconsideration of monetary sanctions, including compensatory contempt fine);

Angell, 674 S.W.2d at 149 (same).

 Point II is granted.

 Point III

 In his third point on appeal, Mauzy argues the trial court erred in awarding $6,000.00 in

attorneys’ fees to Chemline because he did not violate the injunction order, willfully or

otherwise. We disagree.

 In a civil contempt proceeding, a trial court has the inherent authority to assess attorneys’

fees for willful disobedience of a court order “as part of the costs and expenses incurred by the

complainant in the prosecution of the contempt proceedings.” Levis, 771 S.W.2d at 932. We

will affirm an award of attorneys’ fees unless it constitutes an abuse of discretion. Id.

 12
 The trial court here faced a question of credibility of whether Mauzy believed in good

faith that his actions were not prohibited by the Order or whether he was attempting to

circumvent the letter and spirit of the Order by redefining its terms to suit his needs. On this

matter the trial court specifically found that Mauzy engaged in willful disobedience of the Order

and that, given the “nature of the sales business, [Mauzy’s] belief that he ‘thought he could

maintain friendships as long as [he] didn’t solicit their business’ is a method of circumventing

the intent of the [trial c]ourt’s previous order, which was to refrain from contacting the listed

customers.”

 Given our discussion in Point I, supra, regarding the reasonableness of Mauzy’s

interpretation of the Order and his admissions that his “assumptions” about the Order’s meaning

were not supported by its plain text, we are inclined to agree with the trial court’s determination

that Mauzy willfully disobeyed the Order. 5 We cannot say the trial court abused its discretion in

awarding Chemline attorneys’ fees in the amount of $6,000.00.

 Point III is denied.

 Conclusion

 The trial court’s judgment is affirmed in part and reversed and remanded in part. We

affirm the judgment finding Mauzy in contempt of the injunction order and we affirm the related

grant of attorneys’ fees to Chemline in the amount of $6,000.00. We reverse the portion of the

judgment assessing a $2,000.00 fine and remand to allow the trial court to reconsider whether a

compensatory fine is proper here.

5
 Mauzy has not pointed us to any evidence in the record showing that his actions—particularly in contacting Frey
over thirty times—were not in willful violation of the Order. Indeed, the only statement in Mauzy’s appellate briefing
regarding a lack of willfulness is a footnote that states: “Even if the Court would find that Mr. Mauzy’s actions
amounted to a violation of the Injunction Order, it would be a further leap to find that not only was it a violation but
a willful violation.”

 13
 ____________________________
 Robin Ransom, Presiding Judge

Sherri B. Sullivan, J., and Lisa P. Page, J., concur.

 14